**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

DEC 05 2016

JAMES W. McCORMACK, CLERK
By: _____
　　　　　　　　　　DEP CLERK

**GENESIS INSURANCE COMPANY**　　　　　　　　　　　　**PLAINTIFF**

v.　　　　　　　　No. CIV- *4:16-cv- 880 - BSM*

**THE LITTLE ROCK SCHOOL DISTRICT AND
SHERRY PETTY, ADMINISTRATOR OF THE
ESTATE OF MALIK LEWIS, DECEASED**　　　　　　　　　**DEFENDANTS**

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff GENESIS INSURANCE COMPANY, by and through its attorneys, brings this action for declaratory judgment against defendants SHERRY A. PETTY, ON BEHALF OF THE ESTATE OF MALIK LEWIS, deceased, and LITTLE ROCK SCHOOL DISTRICT, pursuant to 28 U.S.C. § 2201, and alleges:

### I.　Parties

1.　　Plaintiff Genesis Insurance Company ("Genesis") is a Delaware corporation, with its principal place of business in Stamford, Connecticut.

2.　　On information and belief, Defendant Sherry A. Petty ("Petty") is an individual residing in Pulaski County, Arkansas. Defendant Petty is currently the plaintiff in underlying litigation in the case styled *Sherry A. Petty On Behalf of the Estate of Malik Lewis, deceased, v. Little Rock School District,* currently pending in the Circuit Court of Pulaski County, Arkansas, and bearing Civil Action No. 60CV-13-951 (the "Petty Action").

3.　Defendant Little Rock School District (the "District") is a public body corporate organized under the laws of the State of Arkansas, and located in Pulaski County, Arkansas.

This case assigned to District Judge *Miller*
–1–　and to Magistrate Judge *Volpe*

The District is the sole defendant in the Petty Action, and is also an insured under a policy of liability insurance issued by Genesis.

## II.   Jurisdiction

4.     The Court has jurisdiction over this action under 28 U. S. C. §1332(a), because Plaintiff and all Defendants are citizens of different states, and the matter in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000).

5.     The Court also has jurisdiction over this action under 28 U. S. C. §2201 in that this matter involves an actual controversy between the parties, and Plaintiff is requesting a declaration of the rights and legal relations of the parties hereto with respect to a contract of insurance.

## III.   Venue

6.     Venue is laid in this District under 28 U.S.C. § 1391(b) (2) by virtue of the fact that this insurance coverage action seeks a judicial declaration of the parties' rights and obligations under a policy of liability insurance purchased and issued in this District with respect to the underlying wrongful death action now pending in this District (the Petty Action).   Venue is further laid in this District in that all defendants herein are subject to this Court's personal jurisdiction with respect to this action.

## IV.   Preliminary Allegations
## The Genesis Policy

7.     Genesis  issued  a  policy  of  liability  insurance,  bearing  policy  number YXB301100B, to named insured Little Rock School District, for the policy period July 1, 2009 to July 1, 2010 (hereinafter "the Policy").    A true and correct copy of the Policy is attached and incorporated herein as Exhibit 1.

–2–

8.   Under the School Liability Coverage Part ("Coverage Part A"), the Policy includes

Limits of Liability of $1,000,000 each "occurrence," as defined by the School Liability Coverage

Part, subject to the satisfaction of a $300,000 "Retained Limit," as defined, per "occurrence."

9.   The Policy contains the following provisions, among others:

### *Coverage Part A*
### *Public Liability*

### *SECTION I – COVERAGE*

#### *A.     Insuring Agreement*

*1.     Subject to the applicable **Limit(s) of Insurance** of this Coverage Part, **we** agree to indemnify the **Insured** for **ultimate net loss** in excess of the **retained limit** which the **Insured** becomes legally obligated to pay because of **bodily injury, personal injury, advertising injury**, or **property damage** which occurs during this policy period and to which this insurance applies.  **Our** indemnification obligation shall not arise until the **Insured** itself has paid in full the entire amount of its **retained limit**. The **retained limit** must be paid by the **Insured**, and may not be paid or satisfied, in whole or in part, by any other source of payment, including but not limited to other insurance, or negated, in whole or in part, by any form of immunity to Judgment or liability. No other obligation or liability to pay sums or perform acts or services is covered. The **Insured's** obligation to pay shall have been determined by judgment against the **Insured** after a contested **suit** or by written agreement, which has received **our** prior approval, between the **Insured(s)** and the claimant(s) or the claimant's legal representative.*

**\*\*\*\*\*\*\*\*\*\***

#### *B.     Defense* (as amended by Endorsement No. 2)

*We have no duty to defend any claim or **suit** but **we** shall have the right and **you** shall give **us** the opportunity to associate in the defense of any claim or **suit** against the **Insured** seeking damages for **bodily injury, personal injury, advertising injury**, or **property damage**, which, in **our** sole opinion, may create indemnification obligations for **us** under this Coverage Part. In addition:*

–3–

*1.     The **Insured**, or the **Named Insured** on the **Insured's** behalf, has the duty to defend any **claim** or **suit** seeking damages to which this insurance applies and shall be responsible for paying any **claim expenses**. The **claim expenses** incurred by the **Insured** serve to erode this Coverage Part's **retained limit**.*

\* \* \* \* \* \* \* \*

The Policy includes the following Definitions with respect to Coverage A (as amended by Endorsement No. 2):

\* \* \* \* \* \* \* \*

**D. *Bodily injury*** *means bodily injury, sickness, disease, shock, fright, mental injury or anguish, emotional distress or disability sustained by a natural person, including death resulting from any of these at any time. It also includes **bodily injury** arising out of the rendering of or failure to render medical or paramedical services to persons by any employee in an occupation other than referenced in Exclusion 21. a.*

\* \* \* \* \* \* \* \*

**Q.     *Occurrence*** *means:*

*1 .     With respect to **bodily injury** and **property damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

\* \* \* \* \* \* \* \*

**Z.     *Retained Limit*** *means the amount as shown in **Item 2, Coverage Part A** of the **Declarations Page, Schedule of Retained Limit(s)**.     The amount applies to each and every **occurrence**, and:*

*1 .     Shall be comprised only of **ultimate net loss**.     The **Insured** shall be responsible for all **claim expenses** incurred without any right to indemnification in accordance with this Coverage Part's terms and conditions until the **retained limit** is exhausted as a result of the **ultimate net loss**;*

*2 .     Shall not be impaired by any claims or parts of claims brought against the **Insured** for coverages which are not included in the terms of this Coverage Part; and*

3.     Payment of the **retained limit** may not be satisfied by any other insurance or negated in whole or part by any form of immunity to judgment or liability.

\* \* \* \* \* \* \* \*

**FF.     Ultimate net loss** means the total amount of damages, including any punitive or exemplary damages when not against public policy and attorney fees awarded in favor of third parties, the **Insured** is legally liable to pay because of **bodily injury** . . . . **Ultimate net loss** also includes related **claim expenses.     Ultimate net loss** shall be established after a contested **suit** or by a compromise settlement to which **we** have previously agreed in writing.     **Ultimate net loss** shall be reduced by any recoveries or salvages which have been paid to or collected by **us**.

\* \* \* \* \* \* \* \*

## V.   The Underlying Petty Action

10.     On or about February 28, 2013, Sherry A. Petty, on behalf of the Estate of Malik Lewis, deceased, filed a wrongful death action against the District, in the case styled *Sherry A. Petty On Behalf of the Estate of Malik Lewis, deceased, v. Little Rock School District,* currently pending in the Circuit Court of Pulaski County, Arkansas, and bearing Civil Action No. 60CV-13-951 (the "Petty Action").   A true and correct copy of the complaint filed in the Petty Action is attached and incorporated herein as Exhibit 2.

11.     The complaint in the Petty Action alleges that, in an incident taking place on April 10, 2010, decedent Malik Lewis fell from a Little Rock School District bus and died.

12.     The complaint in the Petty Action alleges that the District did not have proper personnel on the bus, was negligent in failing to provide adequately trained bus staff, and caused the wrongful death of Malik Lewis.

13.    The complaint in the Petty Action seeks an award of damages against the District in excess of $1,000,000.

14.    As of the date this Complaint is being filed, Petty and the District are the only parties to the Petty Action.

## VI.    The Defense Of the Petty Action by the District

15.    To date, the District has been defended in the Petty Action by its own chosen counsel, Friday, Eldredge and Clark ("the Friday Firm").

16.    The Friday Firm was retained by, and reports to, the District with respect to the Petty Action.

17.    To date, the District has paid all expenses associated with the defense of the Petty Action.

18.    To date, the District has not requested that Genesis defend the District in the Petty Action.

## VII.    The First Policy Limits Demand Made Upon the District by Petty

19.    On or about October 16, 2016, counsel for underlying plaintiff in the Petty Action sent a letter to the Friday Firm, demanding that the District pay its policy limits to settle the case.

20.    In response to the demand, the District, through the Friday Firm, offered to pay $25,000.

21.    In making its offer, the District contended that this represented the District's "policy limits" under an Arkansas statute requiring the District to have coverage for its vehicles in the amount of $25,000.

22.    Petty did not accept the District's offer of $25,000 to settle the Petty Action.

23.    On information and belief, Petty disagrees with the District's contention that its

"policy limits" are $25,000 for the purposes of the wrongful death claim alleged in the Petty Action.

## VIII.    The First Policy Limits Demand Made Upon Genesis by Petty

24.    On or about November 2, 2016, counsel for underlying plaintiff in the Petty Action sent a letter to counsel representing Genesis, demanding that Genesis pay its policy limits to settle the Petty Action.

25.    On or about December 5, 2016, counsel representing Genesis advised counsel for Petty that Genesis had no obligation with respect to the defense or indemnification of the District in the Petty Action unless and until the District had satisfied the Retained Limit obligation under the Policy.

26.    Counsel for Genesis further advised counsel for Petty that the District had not yet satisfied its Retained Limit obligation under the Policy.

27.    As of the date that this Complaint is being filed, the District has not paid the $300,000 Retained Limit, as defined, under the Policy.

28.    In light of the fact that the District has not satisfied its Retained Limit under the Policy, Genesis declined to pay its policy limits to settle the Petty Action.

29.    On information and belief, Petty disagrees with Genesis' contention that it had no obligation with respect to the defense or indemnification of the District in the Petty Action, including with respect to payment of its policy limits to settle the Petty Action, unless and until the District has satisfied the Retained Limit obligation under the Policy.

## IX.    Applicable Arkansas Statutes Afford the District Certain Immunity

30.    Currently, *Arkansas Code Ann. §21-9-303. Motor vehicle liability insurance required -- Minimum amounts*, provides as follows (emphasis added):

–7–

> (a)   All political subdivisions shall carry liability insurance on
> their motor vehicles or shall become self-insurers, individually or
> collectively, for their vehicles, or both, in the minimum amounts
> prescribed in the Motor Vehicle Safety Responsibility Act,
> 27-19-101 et seq.
> (b)   The combined **maximum liability of local government
> employees**, volunteers, **and the local government employer in any
> action involving the use of a motor vehicle within the scope of
> their employment shall be the minimum amounts prescribed in** the
> Motor Vehicle Safety Responsibility Act, **27-19-101** et seq., **unless
> the political subdivision has purchased insurance coverage** or
> participates in a self-insurance pool providing for an amount of
> coverage **in excess of the minimum amounts** prescribed in the
> Motor Vehicle Safety Responsibility Act, 27-19-101 et seq., **in
> which event the maximum liability of the insurer** or pool **shall be
> the limits of the coverage provided for in the policy** or agreement.
> (c)   (1)   Any person who suffers injury or damage to person or
> property caused by a motor vehicle operated by an employee, agent,
> or volunteer of a local government covered by this section shall
> have a direct cause of action against the insurer if insured, or the
> governmental entity if uninsured, or the trustee or chief
> administrative officer of any self-insured or self-insurance pool.
>      (2)   Any judgment against a trustee or administrator of a
> self-insurance pool shall be paid from pool assets up to the
> maximum limit of liability as provided in this section.

31.    The *Motor Vehicle Safety Responsibility Act, Arkansas Code Ann. §27-19-101,*

requires that the District either carry bodily injury liability coverage in the amount of $25,000 per

person and $50,000 per accident for its motor vehicles, or be self-insured for those amounts.

32.    The District maintains that it is self-insured for bodily injury liability for its motor

vehicles in the amount of $25,000 per person and $50,000 per accident.

33.    Currently, Arkansas Code Ann. §21-9-301, provides as follows (emphasis added):

> (a)   It is declared to be the public policy of the State of Arkansas
> that **all** counties, municipal corporations, **school districts**, public
> charter schools, special improvement districts, and all other
> political subdivisions of the state and any of their boards,
> commissions, agencies, authorities, or other governing bodies **shall
> be immune from liability and from suit for damages except to the
> extent that they may be covered by liability insurance**.

–8–

>    *(b)   No tort action shall lie against any such political subdivision because of the acts of its agents and employees.*

34.   In *Dermott Special School District v. Johnson*, 343 Ark. 90, 94, 32 S.W.3d 477, 480 (2000), the Arkansas Supreme Court held that the immunity granted by *Arkansas Code Ann. §21-9-301(a)* extended to "any recovery in excess of insurance coverage."

## COUNT ONE
### (No Present Obligation Under the Policy)

35.   Genesis incorporates paragraphs 1 through 34 as if fully set forth herein.

36.   The Policy contains the following provision, among others: *"...**we** [Genesis] agree to indemnify the **Insured** for **ultimate net loss** in excess of the **retained limit** which the **Insured** becomes legally obligated to pay because of **bodily injury...".***

37.   The Policy contains the following additional provision, among others: *"**Our** [Genesis] indemnification obligation shall not arise until the **Insured** itself has paid in full the entire amount of its **retained limit**. The **retained limit** must be paid by the **Insured**, and may not be paid or satisfied, in whole or in part, by any other source of payment, including but not limited to other insurance, or negated, in whole or in part, by any form of immunity to Judgment or liability."*

38.   The Policy contains the following additional provision, among others: *"The **Insured's** obligation to pay shall have been determined by judgment against the **Insured** after a contested **suit...".***

39.   As of the date this Complaint is being filed, the District has not paid $300,000 in connection with the defense or settlement of the Petty Action.

40.   An actual controversy exists in that Genesis contends that it has no defense or indemnity obligations under the Policy respecting the Petty Action at this time, including with

respect to payment of any settlement or judgment.    Upon information and belief, Petty contends that Genesis has such obligations at this time.

41.    Under 28 U.S.C. § 2201, Genesis accordingly seeks a judicial declaration of the parties' respective rights and duties under the Policy.

## COUNT TWO
### (No Waiver of Retained Limit Requirement)

42.    Genesis incorporates paragraphs 1 through 41 as if fully set forth herein.

43.    Genesis has not waived the requirement that the District satisfy the Retained Limit under the Policy before Genesis is obligated to participate in the Petty Action in any fashion.

44.    As of the date of the filing of this Complaint, the District has not satisfied the Retained Limit under the Policy with reference to the Petty Action.

45.    Upon information and belief, Petty contends that Genesis is obligated to provide insurance coverage for the difference between the $25,000 offered by the District to settle the Petty Action and the $300,000 Retained Limit under the Policy.    Genesis, on the other hand, contends that it has no such obligation.

46.    Under 28 U.S.C. § 2201, Genesis accordingly seeks a judicial declaration of the parties' respective rights and duties under the under the Policy.

## COUNT THREE
### (No Liability In Excess Of Policy Limits Per Ark. Code Ann. §21-9-303)

47.    Genesis incorporates paragraphs 1 through 46 as if fully set forth herein.

48.    In the Petty Action, Petty has alleged damages exceeding the $1,000,000 in Limits of Liability for each "occurrence" provided under the Policy.

49.    The District has advised counsel for Petty that it contends that, by statute, the District will not be directly liable to Petty for more than $25,000 in damages.

50.     Upon information and belief, Petty contends that the District's liability for damages is not limited to $25,000 under *Arkansas Code Ann. §21-9-303*, and is otherwise not subject to any cap or limit as respects the Petty Action.

51.     An actual controversy has arisen in that, upon information and belief, Petty contends that Genesis would be required to pay the full amount of any judgment obtained against the District in excess of the Policy limits if Genesis does not agree to pay $1,000,000 to settle the Petty Action now, or at some other time prior to trial, but before the District has satisfied its Retained Limit obligation under the Policy.

52.     Genesis, on the other hand, contends that, to the extent any judgment against the District exceeds the Policy limits, Genesis will not be required to pay the portion of any such judgment to the extent it exceeds the Policy limits of $1,000,000 each "occurrence."

53.     Under 28 U.S.C. § 2201, Genesis accordingly seeks a judicial declaration of the parties' respective rights and duties under the Policy.

## COUNT FOUR
### (No Liability In Excess Of Policy Limits Per Ark. Code Ann. §21-9-301)

54.     Genesis incorporates paragraphs 1 through 53 as if fully set forth herein.

55.     The District qualifies as a "school district" within the terms of *Ark. Code Ann. §21-9-301*.

56.     Under the terms of *Ark. Code Ann. §21-9-301,* the District is immune from liability and from suit for damages except to the extent that it may be covered by liability insurance.

57.     In the Petty Action, Petty has alleged damages exceeding the $1,000,000 in Limits of Liability for each "occurrence" provided under the Policy.

–11–

58.   Upon information and belief, Petty contends that the District's liability for damages is not limited to the extent that it may be covered by liability insurance for the Petty Action under *Arkansas Code Ann. §21-9-301.*

59.   Upon information and belief, the District contends that, to the extent its liability for damages is not limited to $25,000 under *Arkansas Code Ann. §21-9-303*, then the District is immune from liability and from suit for damages, except to the extent that it may be covered by liability insurance.

60.   An actual controversy has arisen in that, upon information and belief, Petty contends that Genesis would be required to pay the full amount of any judgment obtained against the District in excess of the Policy limits if Genesis does not agree to pay $1,000,000 to settle the Petty Action now, or at some other time prior to trial, but before the District has satisfied its Retained Limit obligation under the Policy..

61.   Genesis, on the other hand, contends that, to the extent any judgment against the District exceeds the Policy limits, Genesis will not be required to pay the portion of any such judgment to the extent it exceeds the Policy limits of $1,000,000 each "occurrence."

62.   Under 28 U.S.C. § 2201, Genesis accordingly seeks a judicial declaration of the parties' respective rights and duties under the Policy.

### COUNT FIVE
**(Failure to Settle Within Policy Limits)**

63.   Genesis incorporates paragraphs 1 through 62 as if fully set forth herein.

64.   The complaint in the underlying Petty Action alleges a tort claim for wrongful death against the District.

65.     The complaint in the underlying Petty Action alleges that the incident leading to the wrongful death of the decedent involved the use of a motor vehicle, in this case, a bus.

66.     The complaint in the underlying Petty Action alleges that the District was negligent with respect to the incident leading to the wrongful death of the decedent because it failed to provide adequately trained bus staff.

67.     The Policy terms state that the Policy provides coverage for "damages … awarded in favor of third parties [that] the [District] is legally liable to pay."

68.     An actual controversy exists in that Genesis contends that, under Arkansas law, the District can never become legally liable to pay damages awarded in favor of Petty in excess of the Limits of Liability of the Policy.   Upon information and belief, Petty, on the other hand, contends that Genesis could become obligated to pay damages awarded in favor of Petty in excess of the Limits of Liability of the Policy, if Genesis does not agree to pay the Limits of Liability of the Policy to settle the Petty Action prior to trial, and damages in excess of $1,000,000 are awarded.

69.     Under 28 U.S.C. § 2201, Genesis accordingly seeks a judicial declaration of the parties' respective rights and duties under the Policy.

## X.   Relief Requested

WHEREFORE, Genesis respectfully requests that the Court enter judgment declaring the rights and obligations of the parties as follows:

(a)     Genesis has no obligation to indemnify the District for any sums unless, and until, the District has paid $300,000 in claim expenses and/or damages awarded in favor of Petty that the District is legally obligated to pay because of bodily injury.

−13−

(b)     Genesis has no present obligation to indemnify the District for any sums in connection with the Petty Action.

(c)     Genesis has no obligation to cover any damages awarded against the District in the Petty Action in excess of $25,000 but less than or equal to $300,000, unless and until the $300,000 Retained Limit under the Policy has been satisfied by payments made by the District in connection with the defense or agreed settlement of the Petty Action.

(d)     Genesis has no obligation to pay any settlement of claims against the District, or to indemnify the District for any settlement it pays, unless and until the $300,000 Retained Limit under the Policy has been satisfied by payments made by the District in connection with the defense or agreed settlement of the Petty Action.

(e)     Genesis has no obligation to pay any judgment entered against the District in the Petty Action, or to indemnify the District for any judgment in the Petty Action that the District pays, unless and until the $300,000 Retained Limit under the Policy has been satisfied by payments made by the District in connection with the defense or agreed settlement of the Petty Action.

(f)     Under Arkansas law, the District cannot be held liable for damages in the Petty Action in excess of the $1,000,000 Limits of Liability each "occurrence" under the Policy.

(g)     Under Arkansas law, the District cannot be held responsible to pay any judgment entered against it in the Petty Action that is in excess of the $1,000,000 Limits of Liability each "occurrence" provided under the Policy.

(h)    Genesis' obligation to indemnify the District with respect to the Petty Action is limited to the $1,000,000 Limits of Liability each "occurrence" provided under the Policy.

(i)    Genesis' obligation to pay any verdict rendered in the Petty Action is limited to the $1,000,000 Limits of Liability each "occurrence" provided under the Policy.

(j)    Genesis' obligation to pay any damages awarded in the Petty Action is limited to the $1,000,000 Limits of Liability each "occurrence" provided under the Policy.

(k)    Genesis' obligation to pay any judgment entered in the Petty Action is limited to the $1,000,000 Limits of Liability each "occurrence" provided under the Policy.

(l)    Genesis' obligation to pay any settlement of the Petty Action is limited to the $1,000,000 Limits of Liability each "occurrence" provided under the Policy.

Genesis additionally seeks such other and further relief as the Court may deem proper, together with costs, attorneys' fees and disbursements of this action.

Respectfully submitted,

MUNSON, ROWLETT, MOORE & BOONE, P.A.
1900 Regions Center
o400 West Capitol Avenue
Little Rock, Arkansas    72201
Telephone:    (501) 374-6535
Facsimile:    (501) 374-5906
Shane.strabala@mrmblaw.com

BY:    _____

SHANE STRABALA, Ark. Bar No. 2000080
*Attorney for Plaintiff*



Claim Reporting Instructions:  Please refer to the attached document for claim reporting requirements.

To report a claim, please contact us at the address shown:

> Genesis Underwriting Management Company
> Fifteen Piedmont Center, Suite 1400
> 3575 Piedmont Road, NE
> Atlanta, Georgia  30305-1524
>
> Attention:  C. Rodney Lynch, Claim Executive

Losses involving catastrophic injuries or damages should be reported by phone at 800-782-9679.  Early reporting of catastrophic injury or damage claims will permit us to closely follow serious and/or unusual exposure claims.

We look forward to working with you and welcome any inquiries you may have.





**GENESIS INSURANCE COMPANY**
**STAMFORD, CONNECTICUT  06904**

**THE SCHOOL POLICY®**

_____

THIS POLICY JACKET WITH THE COMMON DECLARATIONS PAGE, COVERAGE PARTS,
AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THIS POLICY.
_____

**Genesis Insurance Company**
P.O. Box 10352, Stamford, Connecticut  06904-2352
(203) 328-6660

## THE SCHOOL POLICY - RETAINED LIMIT FORM

### Declarations Page

Policy No. YXB301100B

### Item 1.  General Information

First Named Insured: Little Rock School District

Mailing Address:     810 West Markham
                     Little Rock, AR 72201

Named Insured(s):

Policy Period - Coverage Parts A and B - both dates as 12:01 a.m. Std. time at your mailing address

From: July 1, 2009              To: July 1, 2010

Retroactive Date: July 1, 1993 (applies only to Coverage Part B)

### PART B IS A CLAIMS-MADE COVERAGE PART - PLEASE READ IT CAREFULLY

### Item 2.  Schedule of Retained Limit(s)

| | | |
|---|---|---|
| Coverage Part A | $300,000 | applies to each **occurrence** as defined by the School Liability Coverage Part |
| Coverage Part B | $300,000 | applies to each **claim** as defined by the School Board Legal Liability Coverage Part |

### Item 3.  Limit(s) of Insurance

| | | |
|---|---|---|
| Coverage Part A | $3,000,000 | Coverage Part Aggregate Limit |
| | $1,000,000 | Each **occurrence** as defined by the School Liability Coverage Part |
| Coverage Part B | $2,000,000 | Coverage Part Aggregate Limit |
| | $1,000,000 | Each **claim** as defined by the School Board Legal Liability Coverage Part |

### Item 4.  Premium

| | | |
|---|---|---|
| Coverage Part A | $ ▮ | Flat Premium, Adjustable at Rate of |
| | | $ Not Applicable _____ per _____ of _____ |
| | | Subject to Minimum premium of $_____ |
| Coverage Part B | $ ▮ | Flat Premium, Adjustable at Rate of |
| | | $ Not Applicable _____ per _____ of _____ |
| | | Subject to Minimum premium of $_____ |
| TRIA | $ ▮ | Flat Premium – Combined Coverage Parts A and B |

Forms and Endorsements comprising this policy: See Endorsement No. 1

Signed at Stamford, Connecticut on July 6, 2009

*Ronald P. Onderko*

Authorized Representative

TSP DP C-M 01 05/05

Copyright, Genesis Insurance Company, 2005

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Endorsement
Number _____1_____

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB301100B | July 1, 2009 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| Little Rock School District | | The School Policy<br>Retained Limit Form<br>Coverage Parts A & B<br>Common Policy Conditions |

### CHANGES

### <u>SCHEDULE OF FORMS AND ENDORSEMENTS</u>

| | |
|---|---|
| TSP A 00 01 05/05 | Coverage Part A - School Liability |
| TSP B C-M 00 01 05/05 | Coverage Part B - School Board Legal Liability - Claims Made Coverage |
| TSP CC 00 01 05/05 | Common Policy Conditions |
| TSP A 24 12 05/05 | Claim Expenses Erode Retained Limit and Limit(s) of Insurance |
| TSP A 24 23 05/05 | Limited Pollution Liability Coverage for Educational Institutions |
| TSP A C-M 04 03 05/05 | Medical Incident Liability Coverage |
| TSP A/B 00 02 05/05 | Nuclear Energy Liability Exclusion |
| IC 09 14 01 08 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| IC 09 21 01 08 | Cap on Losses from Certified Acts of Terrorism |
| IC 09 26 01 08 | Exclusion of Punitive Damages Related to A Certified Act of Terrorism |
| IC 09 40 01 08 | Notice to Policyholders - Restrictions of Terrorism Coverage |

Signed at Stamford, Connecticut on July 6, 2009

*Ronald P. Onderko*

Authorized Representative

**Copyright, Genesis Insurance Company, 2009**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Endorsement
Number___2___

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB301100B | July 1, 2009 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| Little Rock School District | | The School Policy<br>Retained Limit Form<br>Coverage Part A |

## CHANGES

### CLAIM EXPENSES ERODE RETAINED LIMIT
### AND LIMIT(S) OF INSURANCE

**SECTION I – COVERAGE, B. Defense** is deleted and replaced with the following:

**B.     Defense**

**We** have no duty to defend any claim or **suit** but **we** shall have the right and **you** shall give **us** the opportunity to associate in the defense of any claim or **suit** against the **Insured** seeking damages for **bodily injury**, **personal injury**, **advertising injury**, or **property damage**, which, in **our** sole opinion, may create indemnification obligations for **us** under this Coverage Part.  In addition:

1.      The **Insured**, or the **Named Insured** on the **Insured's** behalf, has the duty to defend any claim or **suit** seeking damages to which this insurance applies and shall be responsible for paying any **claim expenses**.  The **claim expenses** incurred by the **Insured** serve to erode this Coverage Part's **retained limit**.

2.      When the **Insured's** legal obligation to pay **ultimate net loss** to which this insurance applies has been determined, and this amount is greater than the relevant **retained limit**, then and only then will the **Insured** be entitled to make claim for indemnity under this Coverage Part.  In such case, the **Insured** shall make claim for indemnification under this Coverage Part as soon as practicable after it has paid or will pay the **retained limit**.  **We** shall then indemnify the **Insured** for **ultimate net loss** that exceeds this Coverage Part's **retained limit** subject to the Coverage Part's relevant **Limit(s) of Insurance** set forth in the **Declarations Page** or in any endorsement.

3.      The **Insured** must obtain **our** prior written consent before offering or agreeing to pay an amount which exceeds the **retained limit** in order to settle any claim or **suit** seeking damages to which this insurance applies either in whole or in part.

4. **We** shall also have the right, but not the duty, to assume control in the defense of any claim or **suit** which, in **our** sole opinion, may create indemnification obligations for **us** under this Coverage Part.  This assumption of control shall include, but not be limited to:

    a.    The investigation of any **occurrence**, **offense**, claim or **suit;**

    b.    The selection or retention of defense counsel;

    c.    The appeal of any judgment; or

    d.    The settlement of any claim or **suit**.

In the event **we** exercise **our** rights specified in this paragraph, the **Limit(s) of Insurance** and the **Insured's** responsibility to pay the **retained limit(s)** and handling of the **claim expenses** will remain unchanged as stated in the policy or Endorsement.

5. If **we** recommend to the **Insured** a settlement of any claim or **suit**, the amount of which exceeds the **retained limit(s)**, the **Insured** will in good faith attempt to settle the claim or **suit** with the claimant(s) or claimant's legal representative at or below the recommended settlement amount.

**SECTION IV – DEFINITIONS**, paragraph **FF. Ultimate net loss** is deleted and replaced by the following:

**FF.** **Ultimate net loss** means the total amount of damages, including any punitive or exemplary damages when not against public policy and attorney fees awarded in favor of third parties, the **Insured** is legally liable to pay because of **bodily injury**, **personal injury**, **advertising injury**, or **property damage**.  **Ultimate net loss** also includes related **claim expenses**.  **Ultimate net loss** shall be established after a contested **suit** or by a compromise settlement to which **we** have previously agreed in writing.  **Ultimate net loss** shall be reduced by any recoveries or salvages which have been paid to or collected by **us**.

Signed at Stamford, Connecticut on July 6, 2009

*Ronald P. Onderko*

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## POLICY CHANGES

Endorsement
Number___3___

| POLICY NUMBER<br><br>YXB301100B | ENDORSEMENT EFFECTIVE<br><br>July 1, 2009 | COMPANY<br><br>Genesis Insurance Company |
|---|---|---|
| NAMED INSURED<br><br>Little Rock School District | | COVERAGE PARTS AFFECTED<br><br>The School Policy<br>Retained Limit Form<br>Coverage Part A |

### CHANGES

### LIMITED POLLUTION LIABILITY COVERAGE FOR EDUCATIONAL INSTITUTIONS

Paragraph 6. of Subsection **C. Exclusions** in **SECTION I - COVERAGE** is deleted and replaced by the following:

6.    a.    For other than the **automobile hazard, bodily injury, personal injury, advertising injury** or **property damage,** arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

    b.    For the **automobile hazard**, **bodily injury** or **property damage** arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time:

        (1)    That are, or that are contained in any property that is:

            (a)    Being transported or towed by, handled, or handled for movement into, onto or from the covered **auto**;

            (b)    Otherwise in the course of transit by or on behalf of the **Insured**; or

            (c)    Being stored, disposed of, treated or processed in or upon the covered **auto**;

        (2)    Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **Insured** for movement into or onto the covered **auto**; or

(3)     After the **pollutants** or any property in which the **pollutants** are contained are moved from the covered **auto** to the place where they are finally delivered, disposed of or abandoned by the **Insured**.

Paragraph b. (1) above only applies to liability assumed under a contract or agreement.

Paragraphs b. (2) and b. (3) above do not apply to **occurrences** that occur away from premises owned by or rented to an **Insured** with respect to **pollutants** not in or upon a covered **auto** if:

(1)     The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of a covered **auto**; and

(2)     The discharge, dispersal, seepage, migration, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

c.     Any loss, cost or expense arising directly or indirectly out of any:

(1)     Request, demand order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

(2)     Claim or **suit** by or on behalf of a governmental authority or others because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of **pollutants**.

Paragraphs a. and b. of this exclusion do not apply to:

(1)     **Bodily injury** or **property damage** caused by heat, smoke or fumes from a **hostile fire**.  Hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be;

(2)     **Bodily injury** or **property damage** arising out of the unintentional discharge, dispersal, seepage, migration, release or escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of a covered **auto** or **mobile equipment** or its parts, if such fuels, lubricants or other operating fluids escape from the **auto** or **mobile equipment** part designed to hold, store or receive them; or

(3)     **Bodily injury** if sustained within a building, which is or was at any time owned or occupied by, or rented to loaned to, any **Insured**, but only so long as the **bodily injury**, was caused by smoke, fumes, vapors or soot from equipment used to heat, cool or dehumidify that building.

(4)     **Bodily injury** or **property damage** arising out of fire fighting activities, including training burns, or intentional demolition or burns for the purpose of limiting a fire, or the discharge of **pollutants** for the purpose of controlling a fire; or from police use of mace, oleoresin capsicum (O.C.), pepper gas or tear gas; or from weed abatement or tree spraying.

**Copyright, Genesis Insurance Company, 2005**

(5)     **Bodily injury** or **property damage** arising directly or indirectly out of storm or waste sewage backup, escape or release if such claim was:

    (i)    Accidental and neither expected nor intended by the **Insured**; and

    (ii)    Instantaneous and was demonstrable as having commenced at a specific time and date during the policy period.

For claims described in this exception, the Each **Occurrence** Limit and Aggregate Limit as stated in **Item 3. Limit(s) of Insurance, Coverage Part A**, of the **Declarations** do not apply. Instead, separate **Limits of Insurance** of $1,000,000 Each **Occurrence**, and $1,000,000 Aggregate apply. Based on the above, Exclusion 7. of this Coverage Part does not apply.

(6)     **Bodily injury** or **property damage** arising directly or indirectly out of discharge, dispersal, release, or escape of chlorine and other chemicals (gas, liquid or solid) which are being used or being prepared for use in fresh or wastewater treatment or in water used in swimming pools, wading pools or decorative fountains, if such discharge, dispersal, release, or escape was:

    (i)    Accidental and neither expected nor intended by the **Insured**; and

    (ii)    Instantaneous and was demonstrable as having commenced at a specific time and date during the policy period.

For claims described in this exception, the Each **Occurrence** Limit and Aggregate Limit as stated in **Item 3. Limit(s) of Insurance, Coverage Part A**, of the **Declarations** do not apply. Instead, separate **Limits of Insurance** of $1,000,000 Each **Occurrence**, and $1,000,000 Aggregate apply.

(7)     **Bodily injury** or **property damage** arising directly or indirectly out of the discharge of **pollutants** occurring during the collection and transportation of hazardous and nonhazardous materials as part of any drop-off or curbside recycling program implemented and operated by the **Insured,** including storage of such recyclable materials by the **Insured** for a continuous period not exceeding ninety (90) days, if such discharge was:

    (i)    Accidental and neither expected nor intended by the **Insured**; and

    (ii)    Instantaneous and was demonstrable as having commenced at a specific time and date during the policy period.

For claims described in this exception, the Each **Occurrence** Limit and Aggregate Limit as stated in **Item 3. Limit(s) of Insurance, Coverage Part A**, of the **Declarations** do not apply. Instead, separate **Limits of Insurance** of $1,000,000 Each **Occurrence**, and $1,000,000 Aggregate apply.

Copyright, Genesis Insurance Company, 2005

(8)  **Bodily injury** or **property damage** arising directly or indirectly out of the discharge of **pollutants** occurring during the collection and transportation of materials as part of garbage collection activities implemented and operated by the **Insured**, excluding any recycling program, if such discharge was:

    (i)  Accidental and neither expected nor intended by the **Insured**; and

    (ii)  Instantaneous and was demonstrable as having commenced at a specific time and date during the policy period.

However, this exception to the exclusion does not apply once the **pollutants** have been deposited at a landfill, garbage dump, or other waste disposal or transfer facility.

(9)  Activities of the **Insured** to test for, monitor, clean up, remove, contain treat, detoxify or neutralize **pollutants**, if such action is in response to a spill, release or other hazardous condition which was not from premises, equipment or location presently or formerly under the ownership or control of the **Insured**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

Signed at Stamford, Connecticut on July 6, 2009

*Ronald P. Onderko*

Authorized Representative

Copyright, Genesis Insurance Company, 2005

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## POLICY CHANGES

Endorsement
Number ___4___

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB301100B | July 1, 2009 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| Little Rock School District | | The School Policy Retained Limit Form Coverage Part A |

### CHANGES

### MEDICAL INCIDENT LIABILITY COVERAGE

THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE
PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY

In consideration of payment of the premium and in reliance upon the statements in the **Declarations Page** and subject to the exclusions, conditions and other terms of **The School Policy, Retained Limit Form**, **Coverage Part A**, to which this Endorsement is attached, the following insurance applies.

### COVERAGE AGREEMENTS

**SECTION I - COVERAGE**

**A.      Insuring Agreement**

**We** agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the **Insured** for **ultimate net loss** in excess of the **retained limit** for which the **Insured** shall be legally obligated to pay because of **claim(s)** first made against the **Insured** during the policy period and

1.      This insurance applies to **bodily injury**, **personal injury**, or **property damage** only if:

(a)      The injury is caused by a **medical incident(s)**, or a series of **related medical incident(s)**, that takes place in the **coverage territory**;

(b)      The injury is caused by a **medical incident(s)**, or a series of **related medical incident(s)**, did not occur before July 1, 2007 (the Retroactive Date) or after the end of the policy period; and

(c)      A **claim(s)** is first made against any **Insured** in accordance with Paragraph 2. below, during this Endorsement's coverage period or an **Extended Reporting Period** we provide under **SECTION V** of this Endorsement.

2.      A **claim(s)** shall be considered to be first made at the earlier of the following times:

(a)     When notice of such **claim(s)** is received and recorded by any **Insured** or by **us** whichever comes first; or

(b)     When **you** become aware of a injury caused by a **medical incident(s)** situation or circumstances which may subsequently give rise to a **claim(s)** being made against any **Insured**, and **you** give written notice to **us**, in accordance with **SECTION E – DUTIES IN THE EVENT OF OCCURRENCE, WRONGFUL ACT, CLAIM OR SUIT** of the **COMMON POLICY CONDITIONS**, but not later than:

(1)     The end of this Endorsement's coverage period; or

(2)     The end of any applicable **Extended Reporting Period**.

3.    All **claim(s)** based on or arising out of the same **medical incident(s)**, or a series of **related medical incident(s)**, by one or more **Insureds** shall be considered first made when the first of such **claim(s)** is made and shall be considered a single **claim**.  Only one **retained limit** and one each **claim Limit(s) of Insurance** shall be applicable to such single **claim**.

4.    When the **Insured's** legal obligation to pay **ultimate net loss** to which this insurance applies has been determined, and this amount is greater than the relevant **retained limit**, then and only then will the **Insured** be entitled to make claim for indemnity under this Endorsement.  In such case, the **Insured** shall make claim for indemnification under this Endorsement as soon as practicable after it has paid or will pay the **retained limit**.  **We** shall then indemnify the **Insured** for **ultimate net loss** that exceeds this Coverage Part's **retained limit** subject to the Coverage Part's relevant **Limit(s) of Insurance** set forth in the **Declarations Page** or in any endorsement.

**B.**    **Defense**

For the purposes of the coverage provided by this Endorsement**,** including the handling of the **claim expenses**, **SECTION I – COVERAGE** paragraph **B. Defense** of **Coverage Part A** applies.

**C.**    **Exclusions**

The **Exclusions** of **Coverage Part A** apply to this Endorsement except for Exclusion 21. a. and b. for which coverage is now provided by this endorsement on a claims-made basis.

In addition, the insurance does not apply to **claims(s)** or suits:

1.    Based upon, or arising out of, any **claim(s)** alleging a **medical incident(s)** which is the subject of any notice given under any policy or policies the term of which has expired prior to the inception date of this endorsement.

2.    Arising out of any **medical incident(s)**, or a series of **related medical incident(s)**, that take place prior to the inception date of this Endorsement's coverage, provided that any person referenced in paragraph 1. of **SECTION E. – DUTIES IN THE EVENT OF OCCURRENCE, WRONGFUL ACT, CLAIM OR SUIT of the COMMON POLICY CONDITIONS** knew or reasonably should have foreseen that such **medical incident(s)**, or a series of **related medical incident(s)**, would give rise to a **claim(s)**.

3.      Any **medical incident(s)**, or a series of **related medical incident(s)**, caused, in whole or in part, by any physician, physician assistant, nurse, midwife or anyone practicing midwifery who is employed by **you** to work in any correctional facility, juvenile detention facility or jail.

## SECTION II - WHO IS AN INSURED

For the purposes of the coverage provided by this Endorsement, **SECTION II – WHO IS AN INSURED** of **Coverage Part A** applies.

## SECTION III - LIMIT(S) OF INSURANCE.

For the purposes of the coverage provided by this Endorsement, the same **SECTION III- LIMIT(S) OF INSURANCE** of **Coverage Part A** applies, it being understood that the each **occurrence Limit of Insurance** shall apply to each **claim** first made and otherwise covered under this Endorsement.  The same Aggregate **Limit of Insurance**, in addition to its applicability to the balance of **Coverage Part A**, shall also apply to all **claims** first made and otherwise covered under this Endorsement.

Separate **Limit(s) of Insurance** are not created by this Endorsement.

## SECTION IV DEFINITIONS

For the purposes of the coverage provided by this Endorsement, the following definitions are added to **SECTION IV – DEFINITIONS** of **Coverage Part A**:

A.      **Claim(s)**, means a **suit** or demand made by or for the injured person for monetary damages because of alleged injury caused by a **medical incident(s)** or a series of **related medical incident(s)**.

B.      **Medical incident(s)**, means any act, error or omission in the providing of or failure to provide **professional medical services** by the **Insured** or any person acting under the direction or control of the **Insured**.

C.      **Professional medical services**, means:

1.      Furnishing medical or paramedical services by any:

(a)     Physician, dentist, nurse, emergency medical technician, first aid attendant or paramedic who is employed by **you** to provide such services; or

(b)     Third party emergency medical technician, first aid attendant or paramedic providing services to **you** under a mutual aid agreement.

2.      Serving as a member of a formal accreditation; standards review or equivalent professional board or committee.

D.      **Related medical incident(s)**, means **medical incident(s)** which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.-

## SECTION V - EXTENDED REPORTING PERIODS

For the purposes of the coverage provided by this Endorsement, the following **Extended Reporting Period** provisions are added:

A.      **We** will provide one or more **Extended Reporting Periods**, as described below, if:

    1.      This Endorsement or policy is canceled or not renewed; or

    2.      **We** renew or replace this Endorsement with insurance that does not apply to or provide **medical incident(s)** coverage on a claims-made basis.

**B.**    **Extended Reporting Periods** do not extend this Endorsement's coverage period or change the scope of coverage provided.  They apply only to **claim(s)** arising out of a **medical incident(s)**  or a series of  **related medical incident(s)** that take place before the end of this Endorsement's coverage period.

    Once in effect, **Extended Reporting Periods** cannot be canceled.

**C.**    A **Basic Extended Reporting Period** is automatically provided without additional charge.  This period starts with the end of this Endorsement's coverage period, and lasts for 60 days.

    The **Basic Extended Reporting Period** does not apply to **claim(s)** that are covered under any subsequent insurance **you** purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such **claim(s)**.

**D.**    A **Supplemental Extended Reporting Period** of 3 years duration is available, but only by an endorsement and for an extra charge.  This supplemental period starts when the **Basic Extended Reporting Period** ends.

    **You** must give **us** a written request for the endorsement within 60 days after the end of this Endorsement's coverage period.  The **Supplemental Extended Reporting Period** will not go into effect unless **you** pay the additional premium promptly when due.

    **We** will determine the additional premium in accordance with **our** rules and rates.  In doing so, **we** may take into account the following:

    1.      The exposures insured;

    2.      Previous types and amounts of insurance;

    3.      **Limit(s) of Insurance** available under this Endorsement for future indemnification payments; and

    4.      Other related factors.

    The additional premium will not exceed 100% of the most recent annual premium for this Endorsement.

    This Endorsement shall set forth the terms, not inconsistent with this section, applicable to the **Supplemental Extended Reporting Period**, including a provision to the effect that the insurance afforded for **claim(s)** received during such period is excess over any other valid and collectible insurance available under policies in force after the **Supplemental Extended Reporting Period** starts.

**E.**    With respect to this Endorsement, the **Extended Reporting Periods** do not reinstate or increase the Aggregate Limit nor do they modify the handling of the **retained limit**.

Signed at Stamford, Connecticut on July 6, 2009

*Ronald P. Onderko*

_____

                              Authorized Representative

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## POLICY CHANGES

Endorsement
Number___5___

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB301100B | July 1, 2009 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| Little Rock School District | | The School Policy<br>Retained Limit Form<br>Coverage Parts A and B |

### CHANGES

### NUCLEAR ENERGY LIABILITY EXCLUSION

This insurance does not apply to:

**Bodily injury**, **personal injury**, **advertising injury**, or **property damage**:

a.    To an **Insured** under this policy who is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

b.    Resulting from the **hazardous properties** of **nuclear material** and with respect to which:

    (1)    Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

    (2)    The **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

c.    Resulting from the **hazardous properties** of **nuclear material**, if:

    (1)    The **nuclear material**:

        (a)    Is at any **nuclear facility** owned by, or operated by or on behalf of an **Insured**; or

        (b)    Has been discharged or dispersed therefrom;

(2)     The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

(3)     The **bodily injury, personal injury, advertising injury,** or **property damage** arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions, or Canada, then subparagraph (3) applies only to **property damage** to or at such **nuclear facility** and any property thereat.

As used in this exclusion:

a.     **Hazardous properties** include radioactive, toxic or explosive properties.

b.     **Nuclear material** means **source material, special nuclear material** or **by-product material**.

c.     **Source material, special nuclear material,** and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

d.     **Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**.

e.     **Waste** means any waste material:

(1)     Containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and

(2)     Resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**.

f.     **Nuclear facility** means:

(1)     Any nuclear **reactor**;

(2)     Any equipment or device designed or used for:

(a)     Separating the isotopes of uranium or plutonium,

(b)     Processing or utilizing **spent fuel**, or

(c)     Handling, processing or packaging **waste;**

     Copyright, Genesis Insurance Company, 2005

     (3)    Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

     (4)    Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g.    **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h.    **Property damage** includes all forms of radioactive contamination of property.

Signed at Stamford, Connecticut on July 6, 2009

*Ronald P. Onderko*

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Endorsement
Number_____6_____

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB301100B | July 1, 2009 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| Little Rock School District | | The School Policy<br>Retained Limit Form<br>Coverage Part A and/or<br>Coverage Part B |

### CHANGES

### CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:

**A.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**B.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Signed at Stamford, Connecticut on July 6, 2009

*Ronald P. Onderko*

Authorized Representative

**IC 09 21 01 08**

Page 1 of 1

Copyright, Genesis Insurance Company, 2008
Contains ISO Copyrighted Material Used With Their Permission

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Endorsement
Number____7____

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB301100B | July 1, 2009 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| Little Rock School District | | The School Policy<br>Retained Limit Form<br>Coverage Part A and/or<br>Coverage Part B |

### CHANGES

### EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

**A.**     The following exclusion is added:


**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a **certified act of terrorism** that are awarded as punitive damages.

**B.**     The following definition is added:

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:

1.     The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.     The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.


Signed at Stamford, Connecticut on July 6, 2009

*Ronald P. Onderko*
_____
Authorized Representative

**Copyright, Genesis Insurance Company, 2008**
Contains ISO Copyrighted Material Used With Their Permission

POLICY NUMBER: YXB301100B

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

Terrorism Premium (Certified Acts) $1,875

**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):   Coverage Part A and Coverage Part B**

**Additional information, if any, concerning the terrorism premium:**

**For accounts domiciled in Missouri the following applies:**

**NOTE: The premium above is for certain losses resulting from certified acts of terrorism as covered pursuant to coverage provisions, limitations and exclusions in this policy. You should read the definition in your policy carefully, but generally speaking, "certified" acts of terrorism are acts that exceed $5 million in aggregate losses to the insurance industry and which are subsequently declared by the U.S. Secretary of the Treasury as a certified terrorist act under the Terrorism Risk Insurance Act. Some losses resulting from certified acts of terrorism are not covered.  Read your policy and endorsements carefully.**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

## NOTICE TO POLICYHOLDERS

## RESTRICTIONS OF TERRORISM COVERAGE

This Notice has been prepared in conjunction with the implementation of changes related to coverage of terrorism under your policy. It contains a brief synopsis of significant exclusionary provisions and limitations.

This Notice does **not** form a part of your insurance contract. The Notice is designed to alert you to coverage restrictions and to other provisions in the terrorism endorsement in this policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

Carefully read your policy, including the endorsements attached to your policy.

### YOUR PREVIOUS POLICY:

- This policy does not contain a terrorism exclusion. However, the policy contains an endorsement under which coverage for "certified acts of terrorism" (which is more fully defined in the endorsement but involves acts of terrorism by or on behalf of a foreign interest) is subject to a limit on our liability pursuant to the federal Terrorism Risk Insurance Act. Further, the absence of a terrorism exclusion does not create coverage for any injury or damage that would otherwise be excluded under the policy, such as losses excluded by the war liability exclusion.

### YOUR RENEWAL POLICY:

- This policy does not contain a terrorism exclusion. However, the policy contains an endorsement under which coverage for "certified acts of terrorism" (which is more fully defined in the endorsement but involves acts of terrorism certified as such under the federal Terrorism Risk Insurance Program) is subject to a limit on our liability and the liability of the federal government pursuant to the federal Terrorism Risk Insurance Act, as outlined below. Further, the absence of a terrorism exclusion does not create coverage for any loss that would otherwise be excluded under the policy, such as losses excluded by the war liability exclusion. Refer to the terrorism endorsement for the definition of "certified acts of terrorism". Refer to the endorsement, and to the rest of the insurance contract, for provisions that govern coverage for, or that exclude coverage for, losses arising from terrorism.

- Information On Limitations On Federal And Insurer Liability: The federal government may participate in paying for some of the losses from a "certified act of terrorism".  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. Further, this coverage is subject to a limit on our liability pursuant to the federal law, that is, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

## CHANGE IN THE DEFINITION OF CERTIFIED ACTS OF TERRORISM

- Under the federal Terrorism Risk Insurance Program Reauthorization Act of 2007, the definition of "certified acts of terrorism" (which is more fully defined in the endorsement) no longer requires that the act of terrorism be committed by or on behalf of a foreign interest. **Therefore, the punitive damages exclusion related to "certified acts of terrorism" is no longer limited to an act of terrorism committed by or on behalf of a foreign interest.** The exclusion applies to any terrorist act when the act is determined by the federal government to be a "certified act of terrorism" under the terms of the federal Terrorism Risk Insurance Program, including for example an act committed against the United States government by a United States citizen.

  Refer to the terrorism endorsement for the definition of "certified acts of terrorism". Refer to the endorsement, and to the rest of the insurance contract, for provisions that govern coverage for, or that exclude coverage for, losses arising from terrorism.

# Coverage Part A
# School Liability

**Various provisions in this Coverage Part restrict coverage.  Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.**

Throughout this Coverage Part the words **you** and **your** refer to the **Named Insured(s)** shown on the **Declarations Page** and any other person, entity or organization qualifying as a **Named Insured** under this Coverage Part.  The words **we**, **us** and **our** refer to **Genesis Insurance Company.**

The word **Insured** means any person or organization qualifying under **SECTION II - WHO IS AN INSURED.**

The words and phrases that are in bold have special meaning.  Please refer to **SECTION IV - DEFINITIONS** for their meaning or take note of the reference within the text.

---

## SECTION I - COVERAGE

### A.      Insuring Agreement

1.      Subject to the applicable **Limit(s) of Insurance** of this Coverage Part, **we** agree to indemnify the **Insured** for **ultimate net loss** in excess of the **retained limit** which the **Insured** becomes legally obligated to pay because of **bodily injury**, **personal injury**, **advertising injury**, or **property damage** which occurs during this policy period and to which this insurance applies.  **Our** indemnification obligation shall not arise until the **Insured** itself has paid in full the entire amount of its **retained limit**.  The **retained limit** must be paid by the **Insured**, and may not be paid or satisfied, in whole or in part, by any other source of payment, including but not limited to other insurance, or negated, in whole or in part, by any form of immunity to judgment or liability.  No other obligation or liability to pay sums or perform acts or services is covered.  The **Insured's** obligation to pay shall have been determined by judgment against the **Insured** after a contested **suit** or by written agreement, which has received **our** prior approval, between the **Insured(s)** and the claimant(s) or the claimant's legal representative.

2.      This insurance applies to **bodily injury**, **personal injury**, **advertising injury**, or **property damage** which occurs during this policy period, provided that prior to this policy period, no **Insured** listed under paragraphs **A.** or **B.** 1., 2., or 3. of **SECTION II – WHO IS AN INSURED** or no person authorized by **you** to give or receive notice of an **occurrence** or claim, knew that the **bodily injury**, **personal injury**, **advertising injury**, or **property damage** had occurred, in whole or part.  If such listed **Insured** or authorized person knew, prior to this policy period, that the **bodily injury**, **personal injury**, **advertising injury**, or **property damage** occurred, then any continuation, change or resumption of such **bodily injury**, **personal injury**, **advertising injury**, or **property damage** during or after this policy period will be deemed to have been known prior to this policy period and will not be covered hereunder.

3.   **Bodily injury, personal injury, advertising injury,** or **property damage** which occurs during this policy period and was not, prior to this policy period, known to have occurred by an **Insured** listed under paragraphs **A.** or **B.** 1., 2., or 3. of **SECTION II – WHO IS AN INSURED** or any person authorized by **you** to give or receive notice of an **occurrence** or claim, includes any continuation, change or resumption of that **bodily injury, personal injury, advertising injury,** or **property damage** after the end of this policy period.

4.   **Bodily injury, personal injury, advertising injury,** or **property damage** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under paragraphs **A.** or **B.** 1., 2., or 3. of **SECTION II – WHO IS AN INSURED** or any person authorized by **you** to give or receive notice of an **occurrence** or claim:

    a.   Reports all, or any part, of the **bodily injury, personal injury, advertising injury,** or **property damage** to **us** or any other insurer;

    b.   Receives a written or verbal demand or claim for damages because of **bodily injury, personal injury, advertising injury,** or **property damage**; or

    c.   Actually or constructively becomes aware by any other means that **bodily injury, personal injury, advertising injury,** or **property damage** has occurred or had begun to occur.

5.   Damages because of **bodily injury** which occurs during this policy period include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**.

6.   With respect to **your** liability for **bodily injury** which occurs during this policy period to **your** employees, **bodily injury** by disease must be caused or aggravated by the conditions of their employment by **you**.   The employee's last day of last exposure to the conditions causing or aggravating such **bodily injury** by disease must occur during this policy period.   A separate **occurrence** will apply to each accident or, with respect to disease, each employee.

7.   Damages because of **bodily injury** or **personal injury** which occurs while insured by Genesis Insurance Company or Genesis Indemnity Insurance Company include damages resulting from **non-employment harassment**, including sexual molestation.   All such **bodily injury** or **personal injury** will be deemed to have occurred at the time of the initial **non-employment harassment** while insured by Genesis Insurance Company or Genesis Indemnity Insurance Company and all such **bodily injury** or **personal injury** will be deemed to be one **occurrence** whether committed by the same perpetrator or two or more perpetrators acting in concert and without regard to the number of incidents of **non-employment harassment** taking place thereafter.   The insurance provided does not apply to any **Insured** who is found by a court of law to have committed a criminal act of **non-employment harassment**.

In any event, the **bodily injury, personal injury, advertising injury,** or **property damage** must be caused by an **occurrence** and the **occurrence** must take place in the **coverage territory**.

**B.**     **Defense**

**We** have no duty to defend any claim or **suit** but **we** will have the right and **you** will give **us** the opportunity to associate in the defense of any claim or **suit** against the **Insured** seeking damages for **bodily injury**, **personal injury**, **advertising injury**, or **property damage**, which, in **our** sole opinion, may create indemnification obligations for **us** under this Coverage Part. In addition:

1.      The **Insured**, or the **Named Insured** on the **Insured's** behalf, has the duty to defend any claim or **suit** seeking damages to which this insurance applies and will be responsible for any **claim expenses** separate from and in addition to the **retained limit**.

2.      When the **Insured's** legal obligation to pay **ultimate net loss** to which this insurance applies has been determined, and this amount is greater than the **retained limit**, then and only then will the **Insured** be entitled to make claim for indemnity under this Coverage Part. The **Insured** will make such claim for indemnification as soon as practicable after it has paid or will pay the **retained limit**. **We** will then indemnify the **Insured** for (a) the amount of such **ultimate net loss** in excess of the **retained limit** subject to the Coverage Part's relevant **Limit(s) of Insurance** set forth in the **Declarations Page** or in any endorsement and (b) for a portion of the **claim expenses** incurred by the **Insured**. **Our** portion of **claim expenses** will be calculated using the following formula: [**ultimate net loss** subject to indemnification by this Coverage Part ÷ total amount of **ultimate net loss**] x [total **claim expenses**]. This indemnity for a portion of the **Insured's claim expenses** will be in addition to this Coverage Part's relevant **Limit(s) of Insurance** set forth in the **Declarations Page** or in any endorsement.

3.      The **Insured** must obtain **our** prior written consent before offering or agreeing to pay an amount which exceeds the **retained limit** in order to settle any claim or **suit** seeking damages to which this insurance applies either in whole or in part.

4.      **We** will also have the right, but not the duty, to assume control in the defense of any claim or **suit** which, in **our** sole opinion, may create indemnification obligations for **us** under this Coverage Part. This assumption of control will include, but not be limited to:

   a.      The investigation of any **occurrence**, **offense**, claim or **suit;**

   b.      The selection or retention of defense counsel;

   c.      The appeal of any judgment; or

   d.      The settlement of any claim or **suit**.

   In the event **we** exercise **our** rights specified in this paragraph, the **Limit(s) of Insurance** and the **Insured's** responsibility to pay the **retained limit(s)** and handling of the **claim expenses** will remain unchanged as stated in the Coverage Part or as amended by Endorsement.

5.      If **we** recommend to the **Insured** a settlement of any claim or **suit**, the amount of which exceeds the **retained limit(s)**, the **Insured** will in good faith attempt to settle the claim or **suit** with the claimant(s) or claimant's legal representative at or below the recommended settlement amount.

## C.    Exclusions

This insurance does not apply to:

1.    **Bodily injury** or **property damage** either expected or intended from the standpoint of the **Insured**. This exclusion does not apply to **bodily injury** or **property damage** resulting from:

    a.    Any corporal punishment administered to **your** students by or at the direction of **your** current or former teachers, student teachers or school administrators.  This coverage does not apply to

        (1)    The malicious infliction of corporal punishment; or

        (2)    Corporal punishment administered in violation of law, or the policy or regulations of the **Insured** or its governing body, where applicable.

    b.    The use of reasonable force to protect persons or property or, with respect to **your** law enforcement activities or **your** departmentally-approved law enforcement activities for others, to an act of the **Insured** (unless deemed to be a criminal act) within the arrest or incarceration process.

2.    **Bodily injury**, **personal injury**, **advertising injury**, or **property damage** that the **Insured** is obligated to pay by reason of the assumption of liability in any contract or agreement.  This exclusion does not apply to liability:

    a.    Assumed in a contract or agreement that is an **insured contract**; or

    b.    The **Insured** would have in the absence of the contract or agreement.

3.    Liability imposed on the **Insured** or the **Insured's** insurer, under any of the following laws:

    a.    Employee Retirement Income Security Act (ERISA) of 1974, including any subsequent amendments or any similar federal, state or local law or regulations;

    b.    Any uninsured motorists, underinsured motorists, or automobile no-fault or first party **bodily injury** or **property damage** law;

    c.    Any workers compensation, unemployment insurance, social security or disability benefits law, or any similar law; or

    d.    Any obligation of the **Insured** under the Jones Act, general maritime law, the Federal Employers Liability Act, Federal Employee Compensation Act, the Defense Base Act or the U.S. Longshoremen and Harbor Workers Compensation Act.

4.    Punitive or exemplary damages because of **bodily injury** to **your** employee while employed by **you** in violation of the law with **your** actual knowledge or the actual knowledge of **your** elected or appointed officials.

5.    **Bodily injury**, **personal injury**, **advertising injury**, or **property damage** arising from **employment wrongful act(s)**.

6.  a.  For other than the **automobile hazard**, **bodily injury**, **personal injury**, **advertising injury**, or **property damage** arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

   b.  For the **automobile hazard**, **bodily injury** or **property damage** arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time:

   (1)  That are, or that are contained in any property that is:

   (a)  Being transported or towed by, handled, or handled for movement into, onto or from the covered **auto**;

   (b)  Otherwise in the course of transit by or on behalf of the **Insured**; or

   (c)  Being stored, disposed of, treated or processed in or upon the covered **auto**;

   (2)  Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **Insured** for movement into or onto the covered **auto**; or

   (3)  After the **pollutants** or any property in which the **pollutants** are contained are moved from the covered **auto** to the place where they are finally delivered, disposed of or abandoned by the **Insured**.

   Paragraph b. (1) above only applies to liability assumed under a contract or agreement.

   Paragraphs b. (2) and b. (3) above do not apply to **occurrences** that occur away from premises owned by or rented to an **Insured** with respect to **pollutants** not in or upon a covered **auto** if:

   (1)  The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of a covered **auto**; and

   (2)  The discharge, dispersal, seepage, migration, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

   c.  Any loss, cost or expense arising directly or indirectly out of any:

   (1)  Request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

   (2)  Claim or **suit** by or on behalf of a governmental authority or others because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of **pollutants**.

     Copyright, Genesis Insurance Company, 2005

Paragraphs a. and b. of this exclusion do not apply to:

    (1)    **Bodily injury** or **property damage** caused by heat, smoke or fumes from a **hostile fire**;

    (2)    **Bodily injury** or **property damage** arising out of the unintentional discharge, dispersal, seepage, migration, release or escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of a covered **auto** or **mobile equipment** or its parts, if such fuels, lubricants or other operating fluids escape from the **auto** or **mobile equipment** part designed to hold, store or receive them; or

    (3)    **Bodily injury** if sustained within a building which is or was at any time owned or occupied by, or rented to loaned to, any **Insured**, but only so long as the **bodily injury**, was caused by smoke, fumes, vapors or soot from equipment used to heat, cool or dehumidify that building.

7.    **Bodily injury**, **personal injury**, **advertising injury**, or **property damage** arising out of the ownership, operation, maintenance, use or entrustment to others of any aircraft, airfields, runways, hangars, buildings, or other properties in connection with any aviation activities or airports owned or operated by or rented or loaned to any **Insured**.

Use includes **loading or unloading**.

However, this exclusion does not apply to liability assumed under any **insured contract** for the ownership, maintenance or use of any aircraft.

8.    **Personal injury** or **advertising injury**:

    a.    Arising out of electronic or other publication, transmission, dissemination or storage of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

    b.    Arising out of electronic or other publication, transmission, dissemination or storage of material whose first publication, transmission, dissemination or storage took place before the beginning of the policy period; or

    c.    Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **Insured**; or

    d.    The infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, paragraph d. of this exclusion does not apply to infringement, in **your** advertisement, of copyright, trade dress or slogan.

9.    **Bodily injury**, **personal injury**, **advertising injury**, or **property damage**, however caused, arising, directly or indirectly, out of:

    a.    War, including undeclared or civil war; or

    b.    Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

     c.     Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

10.    **Property damage** to:

     a.     Property owned, rented or occupied by any **Insured**;

     b.     Property loaned to any **Insured**;

     c.     Premises **you** sell, give away, or abandon, if the **property damage** arises out of any part of those premises; or

     d.     Personal property in the care, custody, or control of any **Insured** except:

         (1)     Property in the possession of persons at time of arrest or incarceration; or

         (2)     Damage sustained to property held or in bailment at **your parking lot and parking garage** operations. (For claims described in this exception, the Each **Occurrence** Limit and the Coverage Part Aggregate Limit of this Coverage Part as stated in **Item 3. Limit(s) of Insurance, Coverage Part A**, of the **Declarations** do not apply. Instead, a separate limit of insurance of $500,000 Each **Occurrence** and $500,000 Coverage Part Aggregate Limit, in excess of the **retained limit**, apply.)

     Paragraph d. (2) above does not apply to:

         (a)     Any liability resulting from any contractual obligation by which the **Insured** accepts responsibility for loss; or

         (b)     Loss due to theft or conversion caused in any way by **you** or **your** employees.

11.    **Property damage** to **your product** arising out of it or any part of it.

12.    **Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

13.    **Property damage** to **impaired property** or property not physically injured, arising out of:

     a.     A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

     b.     A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

     This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

14.    **Bodily injury**, **personal injury**, **advertising injury**, or **property damage** arising directly or indirectly out of, resulting from, caused by or contributed to by:

     a.     The use of, sale of installation of, removal of, abatement of, distribution of, containment of, or exposure to asbestos, asbestos products, asbestos-containing material, asbestos fibers, or asbestos dust;

     b.     The actual or threatened abatement, mitigation, removal or disposal of asbestos, asbestos products, asbestos-containing material, asbestos fibers, or asbestos dust;

    c.    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts a. and b. above; or

    d.    Any obligation of the **Insured** to indemnify any party in connection with subparagraphs a. b. or c. above.

15.    **Bodily injury**, **personal injury**, **advertising injury**, or **property damage** arising directly or indirectly out of, resulting from, caused or contributed to by electromagnetic radiation, provided that such loss, cost or expense results from or is contributed to by the hazardous properties of electromagnetic radiation. This includes any costs for the actual or threatened abatement, mitigation, or removal.

16.    **Bodily injury**, **personal injury**, **advertising injury**, or **property damage** arising directly or indirectly out of, resulting from, caused by or contributed to by:

    a.    The toxic or pathological properties of lead, lead compounds or lead contained in any materials;

    b.    The actual or threatened abatement, mitigation, removal or disposal of lead, lead compounds or materials containing lead;

    c.    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts a. or b. above; or

    d.    Any obligation of the **Insured** to indemnify any party in connection with subparagraphs a. b. or c. above.

17.    **Bodily injury**, **personal injury**, **advertising injury**, or **property damage** arising directly or indirectly out of, resulting from, caused by or contributed to by:

    a.    Any **fungus(es)** or **spore(s)**;

    b.    Any solid, liquid, vapor, or gas produced by or arising out of any **fungus(es)** or **spore(s)**;

    c.    Any material, product, building component, or building structure that contains, harbors, nurtures or acts as a medium for any **fungus(es)** or **spore(s)**;

    d.    Any intrusion, leakage, or accumulation of water or any other liquid that contains, harbors, nurtures or acts as a medium for **fungus(es)** or **spore(s)**;

    e.    The actual or threatened abatement, mitigation, removal or disposal of **fungus(es)** or **spore(s)** or any material, product, building component, or building structure that contains, harbors, nurtures or acts as a medium for any **fungus(es)** or **spore(s)**;

    f.    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with subparagraphs a., b., c., d., or e. above; or

    g.    Any obligation of the **Insured** to indemnify any party in connection with subparagraphs a., b., c., d., e., or f. above.

Exception: This Exclusion 17., parts a., b., c., and d. are subject to a limited exception for such **ultimate net loss** otherwise covered by the terms and conditions of this Coverage Part in excess of the **retained limit**. This limited exception provides only the following separate sublimit of insurance: (a) $100,000 each **Occurrence**, subject to (b) $200,000 in the Aggregate for all policy periods insured by Genesis Insurance Company or Genesis Indemnity Insurance Company.

Notwithstanding **SECTION I - B.** 2. or any other term or condition contained in this policy including any endorsement, under no circumstances will this limited exception to Exclusion 17. provide indemnification for **claim expenses** or any other expense incurred in the defense of such claim or **suit**, nor will such amounts serve to erode the **retained limit**.

18. **Bodily injury**, **personal injury**, **advertising injury**, or **property damages** arising out of any land use issue, including but not limited to, condemnation, inverse condemnation, adverse possession, dedication by adverse use, or disputes involving the application of impact or linkage fees. This includes, but is not limited to takings and partial takings of private property resulting from the application of a land use, zoning, building, subdivision or similar ordinance or regulation.

19. **Bodily injury**, **personal injury**, **advertising injury**, or **property damages** arising from subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, or any other land or earth movement, including earthquake.

20. **Bodily injury**, **personal injury**, **advertising injury**, or **property damages** arising from any investigation, claim, **suit** or other proceeding seeking relief or redress in any form other than money damages, including but not limited to, costs, fees, or expenses which the **Insured** may become obligated to pay as a result of a consent decree, settlement or adverse judgment for declaratory relief or injunctive relief.

21. Note:  The following exclusion does not apply to the extent coverage is provided by the Medical Incident Liability endorsement when attached to this policy.
    **Bodily injury**, **personal injury**, **advertising injury**, or **property damages** arising out of the rendering of or failure to render medical or paramedical services to persons:

    a.    By any physician, physician assistant, dentist, nurse, emergency medical technician, first aid attendant or paramedic who is employed by **you** to provide such services; or

    b.    By any third party emergency medical technician, first aid attendant or paramedic providing services to **you** under a mutual aid agreement.

    This exclusion does not apply to any employee other than referenced in paragraph a. above.

22. **Bodily injury**, **personal injury**, **advertising injury**, or **property damage** arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, congestion of, contact with, exposure to existence of, or presence of:

    a.    **Silica, silica-related dust**, exposure to silica or the use of silica;

    b.    Any damages or any loss, cost or expense arising, in whole or in part, out of any

          (1)    Claim or suit by or on behalf of any governmental authority or any other alleged responsible party because of, or

          (2)    Request, demand, order or statutory or regulatory requirement that any insured or any other person or entity should be, or should be responsible for:

                 (a)    Assessing the presence, absence or amount or effects of silica or **silica-related dust**;

                 (b)    Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, neutralizing, treating, detoxifying, remediating, neutralizing, abating, disposing of or mitigating silica; or

(c)    Responding to **silica** or **silica-related dust** in any way other than as described in (2) (a) and (b) above;

c.    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with subparagraphs a. or b. above; or

d.    Any obligation of the **Insured** to indemnify or contribute with any party in connection with subparagraphs a., b., or c. above.

23.    **Bodily injury**, **personal injury**, **advertising injury**, or **property damage** arising out of the loss of, loss of use of, damages to, corruption of, inability to access, or inability to manipulate **electronic data**.

## SECTION II - WHO IS AN INSURED

A.    **You** are an **Insured**.

B.    Each of the following is an **Insured** while acting within the scope of their duties as such:

1.    All persons who were, are now, or will be **your** elected or appointed officials or members of the Board of Education, Board of Trustees, School Directors, Superintendents, Assistant Superintendents, Administrators, Assistant Administrators, Principals, Vice Principals, School Committee, or any equivalent administrative position.

2.    Current or former commissions, boards or other entities, including their current or former members, under **your** exclusive operation and jurisdiction.

3.    All of **your** current or former employees including teachers, student teachers, or school administrators while acting within the scope of their duties for the **Insured** and under **your** direction and control.

4.    All persons who perform a service on a volunteer basis for **you**, provided such performance is under **your** direction and control. This does not include any person working on retainer or as an independent contractor.

5.    Student Body Organizations including those involved with radio, television and publishing, Parent-Teacher Organizations, Booster Clubs, while under jurisdiction of **your** governing board.

6.    Students, including the parents or legal guardians of those students, who serve as members of **your** safety patrol, but only with respect to liability arising out of service by the student as a safety patrol member.

7.    The estate of any person in 1. through 6. above.

C.    Any person, entity, or any organization while acting as **your** real estate manager.

D.    Any person, entity, or any organization **you** are required by an **insured contract** to include as an **Insured**. This insurance will be limited to the extent of coverage and Limits of Liability required by the **insured contract** and will not increase the limits stated in **SECTION III - LIMIT(S) OF INSURANCE** or alter any of the terms of coverage stated in this Coverage Part. The **insured contract** must be effective and executed prior to a covered **occurrence**.

    Copyright, Genesis Insurance Company, 2005

E.    With respect to:

Mobile equipment or any auto, any person is an Insured while driving such auto or mobile equipment with your permission.  Any person, entity, or organization responsible for the conduct of such person is also an Insured, but only with respect to bodily injury or property damage arising out of the operation of the auto or mobile equipment.

However, the owner or anyone else from whom you hire or borrow an auto is an Insured only if that auto is a trailer connected to an auto you own.

However, no person, entity, or organization is an Insured under this paragraph E. with respect to:

1.    Property damage to property owned by you or the employer of any person who is an Insured under this provision;

2.    Any auto you hire or borrow from one of your employees, volunteers or members of their households, if they are the owner of such auto, unless acting within the scope of their duties on your behalf;

3.    Any auto being used by a person employed in the business of selling, servicing, repairing, or parking autos unless they are your employees; or

4.    The movement of property to or from an auto except you, your employees, lessees or borrowers of such auto, and any employee of the lessees or borrowers.

F.    Any entity or organization you newly acquire or form and over which you have exclusive jurisdiction will qualify as a Named Insured if there is no other similar insurance available to that entity or organization.

However:

1.    Coverage under this provision is afforded only until the 90th day after you acquire or form the entity or organization or the end of the policy period, whichever is earlier;

2.    Coverage does not apply to bodily injury or property damage that occurred before you acquired or formed the entity or organization; and

3.    Coverage does not apply to personal injury or advertising injury arising out of an offense committed before you acquired or formed the entity or organization.

G.    No person, entity, or organization is an Insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations Page.

## SECTION III - LIMIT(S) OF INSURANCE

A.   The **Limit(s) of Insurance** shown in Item **3.** of the **Declarations Page** and the rules below fix the most **we** will indemnify the **Insured** under this Coverage Part regardless of the number of:

   1.   **Insureds**;

   2.   Claims made or **suits** brought; or

   3.   Persons or organizations making claims or bringing **suits**.

B.   1.   The each **occurrence Limit of Insurance** is the most **we** will indemnify the **Insured** for **ultimate net loss** under **Coverage Part A** for any single **occurrence**.

   2.   Subject to subparagraph **B.** 1. above, the **Coverage Part A** Aggregate Limit is the most **we** will indemnify the **Insured** for all **ultimate net loss** during the policy period for all covered **occurrences**, except **ultimate net loss** because of **bodily injury** or **property damage** arising from the **automobile hazard.**

C.   The each **occurrence Limit of Insurance** and the **Coverage Part A** Aggregate Limit apply to **ultimate net loss** in excess of the **retained limit** shown on the **Declarations Page, Item 2., Schedule of Retained Limit(s), Coverage Part A,** and will not be reduced by the **retained limit.**

D.   If any **occurrence** covered in whole or in part under **Coverage Part A** of this policy (or any preceding or succeeding policy issued by Genesis Insurance Company or Genesis Indemnity Insurance Company) also constitutes a **wrongful act(s)** covered in whole or in part under **Coverage Part B** of this policy (or any preceding or succeeding policy issued by Genesis Insurance Company or Genesis Indemnity Insurance Company), then only the Coverage Part with the higher limits for the each **occurrence (Coverage Part A)** or each **claim(s) (Coverage Part B) Limit(s) of Insurance** as listed on the **Declarations Page** or any Endorsement, and its corresponding **retained limit**, will apply.  If the each **occurrence (Coverage Part A)** and the each **claim(s) (Coverage Part B) Limit(s) of Insurance** as listed on the **Declarations Page** or any Endorsement are equal, only one limit will still apply and it will be the each **occurrence (Coverage Part A) Limit(s)of Insurance** and its corresponding **retained limit.**

E.   The **Limit(s) of Insurance** applies separately to each consecutive annual period, and to any remaining period of less than twelve (12) months, starting with the beginning of the policy period shown on the **Declarations Page**, unless the policy period is extended after issuance for an additional period of less than twelve (12) months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the **Limit(s) of Insurance**.

## SECTION IV - DEFINITIONS

A.   **Advertising injury** means injury arising out of one or more of the following **offenses** committed in the course of advertising **your** goods, products or services:

   1.   Electronic or other publication, transmission, dissemination or storage of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

    2.     Electronic or other publication, transmission, dissemination or storage of material that violates a person's right of privacy;

    3.     Misappropriation of advertising ideas or style of doing business; or

    4.     Infringement of another's copyright, trade dress or slogan in **your** advertisement

**B.**   **Auto** means:

    1.     A land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment; or

    2.     Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, an **auto** does not include **mobile equipment**.

**C.**   **Automobile hazard** means **bodily injury** or **property damage** arising out of the ownership, use (including maintenance or repair), **loading or unloading** of any **auto**.

**D.**   **Bodily injury** means bodily injury, sickness, disease, shock, fright, mental injury or anguish, emotional distress or disability sustained by a natural person, including death resulting from any of these at any time.  It also includes **bodily injury** arising out of the rendering of or failure to render medical or paramedical services to persons by any employee in an occupation other than referenced in Exclusion 21. a.

**E.**   **Claim expenses** mean:

    1.     Claim investigation costs;

    2.     Legal expenses; or

    3.     Litigation costs, including but not limited to **pre-** and post-**judgment interest** as required by law on awards and judgments and the cost of bonds to release attachments or to appeal without any obligation to furnish such bonds

which are reasonable in amount and can be directly allocated to the defense of an **Insured** against a specific claim or **suit** to which this Coverage Part applies.

**Claim expenses** also includes reasonable attorney fees and necessary litigation expenses incurred which are the **Insured's** obligation under an **insured contract** in the defense of an indemnitee or incurred by an indemnitee at the **Insured's** request.

**Claim expenses** do not include salaries and expenses of any **Insured** (including affiliate or subsidiary organizations of any **Insured**), annual retainers, overhead, and any fees paid for claim administration.

**F.**   **Coverage territory** means anywhere in the world if the **Insured's** responsibility to pay damages is determined in a **suit** brought in the United States of America (including its territories and possessions), Puerto Rico or Canada.

**G.**   **Electronic data** means information, facts or programs stored as or on, created or used on, transmitted to or from computer software, including systems ad applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**H.**   **Employment-related harassment** means actual or alleged unwelcome or offensive verbal or physical conduct, including sexual molestation, against a present or former employee of, or an applicant for employment with, the **Named Insured**.

**I.**   **Employment wrongful act(s)** means any actual or alleged error or misstatement or misleading statement, act or omission, neglect, negligence or breach of duty by an **Insured** against a present or former employee of, or an applicant for employment with, the **Named Insured**, including, but not limited to, refusal to employ, termination of employment, wrongful demotion, wrongful failure to promote, negative evaluation, hostile work environment, reassignment, wrongful discipline, defamation, humiliation, false arrest, false imprisonment, coercion, libel, slander, retaliation, invasion of privacy, failure to grant tenure, **employment-related harassment** or discrimination.

**J.**   **Fungus(es)** includes, but is not limited to, any form or type of mold, mushroom or mildew.

**K**   **Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

**L.**   **Impaired property** means tangible property, other than **your product** or **your work** that cannot be used or is less useful because:

1.   It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.   **You** have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.   The repair, replacement, adjustment or removal of **your product** or **your work**; or

2.   **Your** fulfilling the terms of the contract or agreement.

**M.**   **Insured contract** means:

1.   A lease of premises;

2.   A sidetrack agreement;

3.   Any easement or license agreement except in connection with:

    a.   Vehicle or pedestrian private railroad crossings at grade; or

    b.   Construction or demolition operations on or within 50 feet of a railroad;

4.   A mutual aid assistance agreement or contract between political subdivisions;

5.   An elevator maintenance agreement;

6.   Any law enforcement service agreement for anyone other than **you** provided such agreement has received **your** departmental approval;

7.   That part of any other contract or agreement pertaining to **your** operation under which **you** assume the **tort liability** of another because of **bodily injury** or **property damage** to a third person or organization, provided the **bodily injury** or **property damage** is caused in whole or in part, by **you** or **your** agents or subcontractors acting on your behalf, if the contract or agreement is made prior to the **bodily injury** or **property damage**; or

8.  That part of any contract or agreement entered into, as part of the **Insured's** operation, by the **Insured** or any of the **Insured's** employees pertaining to the rental or lease of any **auto**.

An **insured contract** does not include that part of any contract or agreement:

1.  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a.  Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

    b.  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

2.  Under which the **Insured**, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the **Insured's** rendering or failure to render professional services, including but not limited to, those listed in paragraph 1.a. above and supervisory, inspection or engineering services;

3.  That indemnifies any person or organization for damage by fire to premises rented or loaned to **you**;

4.  That pertains to the loan, lease or rental of an **auto** to the **Insured** or any of the **Insured's** employees, if the **auto** is loaned, leased or rented with a driver; or

5.  That holds a person or organization engaged in the business of transporting property by **auto** for hire harmless for the **Insured's** use of a covered **auto** over a route or territory that a person or organization is authorized to serve by public authority.

**N.  Loading or unloading** means the handling of property:

1.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, **auto** or **mobile equipment**;

2.  While it is in or on an aircraft, watercraft, **auto** or **mobile equipment**; or

3.  While it is being moved from an aircraft, watercraft, **auto** or **mobile equipment** to the place where it is finally delivered;

but **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, **auto** or **mobile equipment**.

**O.  Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.  Vehicles maintained for use solely on or next to premises **you** own or rent;

3.  Vehicles that travel on crawler treads;

4.  Vehicles whether self-propelled or not, with permanently mounted:

    a.  Power cranes, shovels, loaders, diggers or drills; or

      b.      Road construction or resurfacing equipment such as graders, scrapers or rollers;

5.      Vehicles not described in 1., 2., 3., or 4. immediately preceding that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      a.      Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      b.      Cherry pickers and similar devices used to raise or lower workers;

6.      Vehicles not described in 1., 2., 3., or 4. of this section maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

      a.      Equipment designed primarily for:

            (1)      Snow removal;

            (2)      Road maintenance, but not construction or resurfacing; or

            (3)      Street cleaning;

      b.      Cherry pickers and similar devices mounted on automobiles or truck chassis and used to raise or lower workers; and

      c.      Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, **mobile equipment** does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **autos**.

**P.**      **Non-employment harassment** means actual or alleged unwelcome or offensive verbal or physical conduct, including sexual molestation, against anyone other than a present or former employee of, or an applicant for employment with, the **Named Insured** and shall include any alleged failure to prevent such conduct.

**Q.**      **Occurrence** means:

1.      With respect to **bodily injury** and **property damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

2.      With respect to **personal injury** and **advertising injury**, an **offense** or series of related **offenses**.

**R.**      **Offense** means any of the **offenses** included in the definitions of **advertising injury** or **personal injury**.

**S.**     **Parking lot and parking garage** mean:

    1.     Those areas **you** own and operate that are used by the general public, including **your** employees or students, to park **autos** or **mobile equipment** whether or not a fee is charged; and

    2.     Those areas where **you**, or an **Insured** on **your** behalf, are exercising physical control over such **autos** or **mobile equipment** or otherwise where **your** legal liability has been established.

**T.**     **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following **offenses** from the conduct of **your** operations:

    1.     False arrest, detention or imprisonment;

    2.     Malicious prosecution;

    3.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor,

    4.     Electronic or other publication, transmission, dissemination or storage of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

    5.     Electronic or other publication, transmission, dissemination or storage of material that violates a person's right of privacy.

**Personal injury** also includes the following **offenses**, but only with respect to **your** law enforcement activities or **your** departmentally approved law enforcement activities for others:

    6.     Assault and battery;

    7.     Violation of civil rights;

    8.     Violation of property rights;

    9.     Erroneous service of process; or

    10.     Failure of **your** law enforcement department and its employees to follow departmentally approved policy(ies) or procedure(s).

**U.**     **Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned, or reclaimed.

**V.**     **Pre-judgment interest** means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment whether or not made part of the settlement, verdict, award or judgment.

**W.**     **Post-judgment interest** means interest of the full amount of any settlement, verdict, award or judgment that accrues after entry of the settlement, verdict, award or judgment and before **we** have paid, offered to pay, or deposited in court the part of the settlement, verdict, award or judgment that is within the applicable **Limit(s) of Insurance**.

    Copyright, Genesis Insurance Company, 2005    

**X.**   1.   **Products-completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** except:

    a.   Products that are still in **your** physical possession; or

    b.   Work that has not yet been completed or abandoned.

  2.   **Your work** will be deemed completed at the earliest of the following times:

    a.   When all of the work called for in **your** contract has been completed.

    b.   When all of the work to be done at the site has been completed if **your** contract calls for work at more than one site.

    c.   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  3.   This hazard does not include **bodily injury** or **property damage** arising out of:

    a.   The transportation of property unless the injury or damage arises out of a condition in or on a vehicle created by the **loading or unloading** of it;

    b.   The existence of tools, uninstalled equipment or abandoned or unused materials.

**Y.**   **Property damage** means:

  1.   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

  2.   Loss of use of tangible property that has not been physically injured.  All such loss of use will be deemed to have occurred at the time of the **occurrence** that caused it.

For the purposes of this insurance, **electronic data** is not tangible property.

**Z.**   **Retained limit** means the amount as shown in **Item 2, Coverage Part A** of the **Declarations Page, Schedule of Retained Limit(s)**.  This amount applies to each and every **occurrence**, and:

  1.   Shall be comprised only of **ultimate net loss**.  The **Insured** shall be responsible for all **claim expenses** incurred without any right to indemnification in accordance with this Coverage Part's terms and conditions until the **retained limit** is exhausted as a result of the **ultimate net loss**;

  2.   Shall not be impaired by any claims or parts of claims brought against the **Insured** for coverages which are not included in the terms of this Coverage Part; and

  3.   Payment of the **retained limit** may not be satisfied by any other insurance or negated in whole or part by any form of immunity to judgment or liability.

**AA.**   **Silica** means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

   Copyright, Genesis Insurance Company, 2005

**BB.**   **Silica-related dust** means a mixture or combination or silica and other dust or particles.

**CC.**   **Spore(s)** include any reproductive body produced by or arising out of any **fungus(es)**.

**DD.**   **Suit** means a civil proceeding in which damages because of **bodily injury**, **personal injury**, **advertising injury**, or **property damage** to which this Coverage Part applies are alleged.  **Suit** includes:

    1.   An arbitration proceeding alleging such damages; or

    2.   Any other alternative dispute resolution proceeding alleging such damages.

**EE.**   **Tort liability** means a liability that would be imposed by law for injury or damage to persons or property in the absence of any contract or agreement.

**FF.**   **Ultimate net loss** means the total amount of damages, including any punitive or exemplary damages when not against public policy and attorney fees awarded in favor of third parties, the **Insured** is legally liable to pay because of **bodily injury**, **personal injury**, **advertising injury**, or **property damage**.  **Ultimate net loss** shall be established after a contested **suit** or by a compromise settlement to which **we** have previously agreed in writing.  **Ultimate net loss** shall be reduced by any recoveries or salvages which have been paid to or collected by **us**.  However, the amount of **ultimate net loss** shall not include any **claim expenses** incurred in the defense of a claim or **suit** by any **Insured**, by **us** or by any underlying insurer.

**GG.**   **Your product** means:

    1.   Any goods, or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        a.   **You**;

        b.   Others trading under **your** name; or

        c.   A person or organization whose business or assets **you** have acquired; and

    2.   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **Your product** includes:

    1.   Its design, formulation, construction or manufacture;

    2.   Warranties or representations made at any time with respect to the fitness, quality, durability, or performance or **your product**; and

    3.   The providing of or failure to provide warnings or instructions.

    **Your product** does not include property rented to or located for the use of others but not sold.

 Copyright, Genesis Insurance Company, 2005

**HH.**   **Your work** means:

    1.      Work or operations performed by **you** or on **your** behalf; and

    2.      Materials, parts or equipment furnished in connection with such work or operations.

    **Your work** includes:

    1.      Its design, formulation or construction;

    2.      Warranties or representations made at any time with respect to the fitness, quality, durability, or performance of **your work**; and

    3.      The providing of or failure to provide warnings or instructions.

# Coverage Part B
# School Board Legal Liability
# Claims Made Coverage

**Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.**

Throughout this Coverage Part the words **you** and **your** refer to the **Named Insured(s)** shown on the **Declarations Page** and any other person, entity or organization qualifying as a **Named Insured** under this Coverage Part. The words **we, us** and **our** refer to **Genesis Insurance Company**.

The word **Insured** means any person or organization qualifying under **SECTION II - WHO IS AN INSURED.**

The words and phrases that are in bold have special meaning. Please refer to **SECTION V - DEFINITIONS** for their meaning or take note of the reference within the text.

## SECTION I - COVERAGE

**A.    Insuring Agreement**

1.    Subject to the applicable **Limit(s) of Insurance** of this Coverage Part, **we** agree to indemnify the **Insured** for **loss** in excess of the **retained limit** which the **Insured** becomes legally obligated to pay because of a **wrongful act(s)** to which this insurance applies. **Our** indemnification obligation shall not arise until the **Insured** itself has paid in full the entire amount of its **retained limit**. The **retained limit** must be paid by the **Insured**, and may not be paid or satisfied, in whole or in part, by any other source of payment, including but not limited to other insurance, or negated, in whole or in part, by any form of immunity to judgment or liability. No other obligation or liability to pay sums or perform acts or services is covered. The **Insured's** obligation to pay **loss**, other than **claim expenses**, shall have been determined by judgment against the **Insured** after a contested **claim** or by written agreement, which has received **our** prior approval, between the **Insured(s)** and the claimant(s) or the claimant's legal representative.

2.    This insurance applies to a **wrongful act(s)** only if:

a.    The **wrongful act(s)** takes place in the **coverage territory**;

b.    The **wrongful act(s)**, including all **related wrongful act(s)**, takes place on or after the **retroactive date**, if any, shown in the **Declarations Page** and before the end of this policy period; and

c.    A **claim(s)** is first made against any **Insured**, in accordance with paragraph 3. below, during this policy period or any **Extended Reporting Period we** may provide according to **SECTION IV**.

3.    A **claim(s)** will be deemed to have been first made at the earlier of the following times:

a.    When notice of such **claim(s)** is received and recorded by any **Insured** or by **us**, whichever comes first; or

b.   When **you** become aware of a **wrongful act(s)**, situation or circumstances which may subsequently give rise to a **claim(s)** being made against any **Insured**, and **you** give written notice to **us**, in accordance with **SECTION E – DUTIES IN THE EVENT OF OCCURRENCE, WRONGFUL ACT, CLAIM OR SUIT** of the **COMMON POLICY CONDITIONS**, but not later than:

(1)   The end of this policy period; or

(2)   The end of any applicable **Extended Reporting Period**.

4.   All **claim(s)** based on or arising out of the same **wrongful act(s)**, or a series of **related wrongful act(s)**, by one or more **Insureds** will be considered first made when the first of such **claim(s)** is made and will be considered a single **claim**. Only one **retained limit** and one each **claim Limit(s) of Insurance** will be applicable to such single **claim**.

5.   When the **Insured's** legal obligation to pay **loss** to which this insurance applies has been determined, and this amount is greater than the relevant **retained limit**, then and only then will the **Insured** be entitled to make claim for indemnity under this Coverage Part. In such case, the **Insured** will make claim for indemnification under this Coverage Part as soon as practicable after it has paid or will pay the **retained limit**. **We** will then indemnify the **Insured** for **loss** that exceeds this Coverage Part's **retained limit** subject to the Coverage Part's relevant **Limit(s) of Insurance** set forth in the **Declarations Page** or in any endorsement.

**B.   Defense**

**We** have no duty to defend any **claim(s)** but **we** will have the right and **you** will give **us** the opportunity to associate in the defense of any **claim(s)** against the **Insured** seeking damages for **wrongful act(s)**, which, in **our** sole opinion, may create indemnification obligations for **us** under this Coverage Part. In addition:

1.   The **Insured**, or the **Named Insured** on the **Insured's** behalf, has the duty to defend any **claim(s)** seeking damages to which this insurance applies and will be responsible for paying any **claim expenses**. The **claim expenses** incurred by the **Insured** serve to erode this Coverage Part's **retained limit**.

2.   The **Insured** must obtain **our** prior written consent before offering or agreeing to pay an amount which exceeds the **retained limit** in order to settle any **claim(s)** seeking damages to which this insurance applies either in whole or in part.

3.   **We** will also have the right, but not the duty, to assume control in the defense of any **claim(s)** which, in **our** sole opinion, may create indemnification obligations for **us** under this Coverage Part. This assumption of control will include, but not be limited to:

a.   The investigation of any **wrongful act(s)** or **claim(s)**;

b.   The selection or retention of defense counsel;

c.   The appeal of any judgment; or

d.   The settlement of any **claim(s)**.

In the event **we** exercise **our** rights specified in this paragraph, the **Limit(s) of Insurance** and the **Insured's** responsibility to pay the **retained limit(s)** and handling of the **claim expenses** will remain unchanged as stated in the Coverage Part or as amended by Endorsement.

4.      If **we** recommend to the **Insured** a settlement of any **claim(s)**, the amount of which exceeds the **retained limit(s)**, the **Insured** will in good faith attempt to settle the **claim(s)** with the claimant(s) or claimant's legal representative at or below the recommended settlement amount.

**C.    Exclusions**

This insurance does not apply to any **loss**:

1.      Based upon, or arising out of, any **wrongful act(s)** or **claim(s)** which are the subject of any notice given under any policy or policies the term of which has expired prior to the inception date of this policy.

2.      Arising out of any **wrongful act(s)** or **related wrongful acts** that takes place prior to the inception date of this Coverage Part, provided that any person referenced in paragraph 1. of **SECTION E. – DUTIES IN THE EVENT OF OCCURRENCE, WRONGFUL ACT, CLAIM OR SUIT of the COMMON POLICY CONDITIONS** knew or reasonably should have foreseen that such **wrongful act(s)** or **related wrongful acts** would give rise to a **claim(s)**.

3.      Brought about or contributed to by the fraud, dishonesty or bad faith of an **Insured** or arising from the deliberate violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent of the **Insured**.  The actual or alleged conduct of any **Insured** will not be imputed to any other **Insured** for the applicability of this exclusion.

4.      Arising out of or attributable to the **Insured** gaining profit, advantage, or remuneration to which the **Insured** is not entitled.  The actual or alleged conduct of any **Insured** will not be imputed to any other **Insured** for the applicability of this exclusion.

5.      Arising directly or indirectly out of any **Insured's**:

   a.      Obligations under the Employee Retirement Income Security Act of 1974 (ERISA), including any subsequent amendments or any similar federal, state or local law or regulation;

   b.      Activities in any fiduciary capacity; or

   c.      Failure to effect, adequately purchase or maintain any insurance, bond or self-insurance fund.

6.      Arising out of any land use issue, including but not limited to, condemnation, inverse condemnation, adverse possession, dedication by, adverse use, or disputes involving the application of impact or linkage fees.  This includes but is not limited to takings and partial takings of private property resulting from the application of a land use, zoning, building, subdivision or similar ordinance or regulation.

7.      Arising directly or indirectly out of:

   a.      **Bodily injury**;

   b.      **Property damage**;

   c.      **Personal injury**; or

   d.      **Advertising injury**.

   This exclusion does not apply to **loss** arising out of any **employment wrongful act(s)**.

8.    a.    Arising directly or indirectly out of or contributed to by any actual or alleged violation of:

        (1)    The Securities Act of 1933;

        (2)    The Securities Exchange Act of 1934;

        (3)    The Public Utilities Holding Act of 1935;

        (4)    The Trust Indenture Act of 1939;

        (5)    The Investment Company Act of 1940; or

        (6)    Any State Blue Sky Laws.

    b.    Based upon common law principles of liability similar to any law listed in a. above; or

    c.    Involving, directly or indirectly:

        (1)    Debt security financing, including but not limited to bonds, notes and debentures; or

        (2)    The investment of, or the failure to invest, public funds, including but not limited to the use of derivative investment instruments.

9.    a.    Which arises directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

    b.    Cost or expense arising directly or indirectly out of any:

        (1)    Request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants**;

        (2)    **Claim** by or on behalf of a governmental authority or others because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**; or

        (3)    **Insured's wrongful act** in complying with, enforcing or enacting any rule, ordinance, law or regulation having to do with the prevention, mitigation, monitoring, clean up, removal, containment, treatment, detoxification, neutralization, or assessment of the effects of **pollutants**.

10.    Cost or expense arising directly or indirectly out of, resulting from, caused or contributed to by electromagnetic radiation, provided that such **loss**, cost or expense result from or are contributed to by the hazardous properties of electromagnetic radiation.  This includes any costs for the actual or threatened abatement, mitigation, or removal.

11.    Cost or expense arising directly or indirectly out of, resulting from, caused by or contributed to by:

    a.    The use of, sale of installation of, removal of, abatement of, distribution of, containment of, or exposure to asbestos, asbestos products, asbestos-containing material, asbestos fibers, or asbestos dust;

    b.    The actual or threatened abatement, mitigation, removal or disposal of asbestos, asbestos products, asbestos-containing material, asbestos fibers, or asbestos dust;

    c.    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts a. and b. above; or

    d.    Any obligation of the **Insured** to indemnify any party in connection with subparagraphs a. b. or c. above.

12.    Cost or expense arising directly or indirectly out of, resulting from, caused by or contributed to by:

    a.    The toxic or pathological properties of lead, lead compounds or lead contained in any materials;

    b.    The actual or threatened abatement, mitigation, removal or disposal of lead, lead compounds or materials containing lead;

    c.    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts a. or b. above; or

    d.    Any obligation of the **Insured** to indemnify any party in connection with subparagraphs a. b. or c. above.

13.    Cost or expense arising directly or indirectly out of, resulting from, caused by or contributed to by:

    a.    Any **fungus(es)** or **spore(s)**;

    b.    Any solid, liquid, vapor, or gas produced by or arising out of any **fungus(es)** or **spore(s)**;

    c.    Any material, product, building component, or building structure that contains, harbors, nurtures or acts as a medium for any **fungus(es)** or **spore(s)**;

    d.    Any intrusion, leakage, or accumulation of water or any other liquid that contains, harbors, nurtures or acts as a medium for **fungus(es)** or **spore(s)**;

    e.    The actual or threatened abatement, mitigation, removal or disposal of **fungus(es)** or **spore(s)** or any material, product, building component, or building structure that contains, harbors, nurtures or acts as a medium for any **fungus(es)** or **spore(s)**;

    f.    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with subparagraphs a., b., c., d., or e. above; or

    g.    Any obligation of the **Insured** to indemnify any party in connection with subparagraphs a., b., c., d., e., or f. above.

**Fungus(es)** includes, but is not limited to, any form or type of mold, mushroom or mildew.

**Spore(s)** include any reproductive body produced by or arising out of any **fungus(es)**.

14.    Arising out of any **Insured's** law enforcement activities.  This includes, but is not limited to:

    a.    **Loss** payable to or caused by any person while being apprehended, held in custody, or who has escaped from custody; and

    Copyright, Genesis Insurance Company, 2005    

b. The operation of detention facilities.

This exclusion does not apply to **loss** arising out of any **employment wrongful act(s)**.

15. Arising out of the destruction, theft, conversion, or disappearance of money, securities or the loss of use thereof.

16. Arising directly or indirectly out of rendering or failure to render **professional services** (even if unpaid) by:

 a. **You**;

 b. Any **Insured**; or

 c. Anyone else for whom **you** may be responsible.

17. Arising out of or related to any **claim** or other proceeding:

 a. By or on behalf of any **Insured**, whether directly or derivatively, against any other **Insured**; or

 b. By the spouse, child, parent, brother or sister of any **Insured** for consequential injury as a result of any injury to any **Insured**.

This exclusion does not apply to **loss** arising out of any **employment wrongful act(s)**.

18. For which the **Insured** is liable or alleged to be liable under any contract or agreement, including any expressed or implied employment contract or any collective bargaining agreement. This exclusion does not apply to **loss** that the **Insured** would have in the absence of the contract or agreement.

19. Arising directly or indirectly out of or related to construction, architectural, or engineering contracts or to any other contract for the purchase of goods or services.

20. Arising directly or indirectly out of:

 a. Any tax assessments or adjustments;

 b. The collection, refund, disbursement or application of any taxes; or

 c. Failure to anticipate tax revenue shortfalls.

21. Arising out of any lockout, strike, picket line, replacement or other similar actions resulting from labor disputes or labor negotiations or any protections contained within the National Labor Relations Act.

22. Arising out of or in connection with any **claim(s)** for any salary, wages, or other employment related benefits which the **Insured** is liable to pay any employee by operation of the:

 a. Fair Labor Standards Act (except the Equal Pay Act);

 b. National Labor Relations Act;

 c. Workers Adjustment and Retaining Notification Act;

     d.      Consolidated Omnibus Budget Reconciliation Act of 1985;

     e.      Occupational Safety and Health Act; or

     f.      Other similar provisions of any federal, state or local statutory or common law or any rules or regulations promulgated under any such law.

23.     Arising out of any investigation, **claim(s)**, or other proceeding seeking relief or redress in any form other than money damages, including but not limited to, costs, fees, or expenses which the **Insured** may become obligated to pay as a result of a consent decree, settlement or adverse judgment for declaratory relief or injunctive relief.  This includes but is not limited to:

     a.      Any failure to integrate or desegregate the student enrollment or participation in any school district, school or educational or extracurricular program on the basis of race, ethnic background, or national origin;

     b.      The busing or other transportation of students to or from schools or extra-curricular events in connection with a program or plan of such integration or desegregation;

     c.      Causing or allowing the student enrollment or participation in any school district, school educational or extra-curricular program to be operated or administered on a discriminatory basis because of race, ethnic background or national origin; or

     d.      The failure to provide an appropriate individualized education program or related facilities or services, including but not limited to, any cause of action under the Individuals with Disabilities Education Act, American with Disabilities Act of 1990, Section 504 of the Rehabilitation Act or any similar federal, state or local law.

24.     Arising directly or indirectly out of any law concerning workers compensation, unemployment insurance, social security, or disability benefits or any similar law.

25.     Arising directly or indirectly out of the failure of any investment in any **employee benefit program**, including but not limited to stocks, bonds, or mutual funds, to perform as represented by an **Insured**.

26.     Arising out of actual or alleged discrimination with respect to the **administration** of the **Insured's employee benefit program** including but not limited to discrimination based on race or national origin, religion or creed, age, sex, sexual orientation, handicap, pregnancy, physical disability, military status, or other employment practices whether or not any of the foregoing violated any federal, state or local governmental or regulation prohibiting such discrimination.

27.     Arising out of **non-employment harassment**.

28.     Cost or expense arising directly or indirectly out of, resulting from, caused by or contributed to by:

     a.      **Silica**, **silica-related dust**, exposure to **silica** or the use of **silica**;

     b.      Any damages or any loss, cost or expense arising, in whole or in part, out of any

         (1)    Claim or suit by or on behalf of any governmental authority or any other alleged responsible party because of, or

         (2)    Request, demand, order or statutory or regulatory requirement that any insured or any other person or entity should be, or should be responsible for:

      (a)    Assessing the presence, absence or amount or effects of **silica** or **silica-related dust**;

      (b)    Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, neutralizing, treating, detoxifying, remediating, neutralizing, abating, disposing of or mitigating **silica**; or

      (c)    Responding to **silica** or **silica-related dust** in any way other than as described in (2) (a) and (b) above;

    c.    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with subparagraphs a. or b. above; or

    d.    Any obligation of the **Insured** to indemnify or contribute with any party in connection with subparagraphs a., b., or c. above.

29.    Cost or expenses arising directly or indirectly out of the loss of, loss of use of, damages to, corruption of, inability to access, or inability to manipulate **electronic data**.

---

## SECTION II - WHO IS AN INSURED

**A.**    **You** are an **Insured**.

**B.**    Each of the following is an **Insured** while acting within the scope of their duties as such:

    1.    All persons who were, are now, or will be **your** elected or appointed officials or members of the Board of Education, Board of Trustees, School Directors, Superintendents, Assistant Superintendents, Administrators, Assistant Administrators, Principals, Vice Principals, School Committee, or any equivalent administrative position.

    2.    Current or former commissions, boards or other entities, including their current or former members, under **your** exclusive operation and jurisdiction.

    3.    All of **your** current or former employees, including teachers, student teachers, or school administrators while acting within the scope of their duties for the **Insured** and under **your** direction and control.

    4.    All persons who perform a service on a volunteer basis for **you**, provided such performance is under **your** direction and control. This does not include any person working on retainer or as an independent contractor.

    5.    Student Body Organizations including those involved with radio, television and publishing, Parent-Teacher Organizations, Booster Clubs, while under jurisdiction of **your** governing board.

    6.    Students, including the parents or legal guardians of those students, who serve as members of **your** safety patrol, but only with respect to liability arising out of service by the student as a safety patrol member.

    7.    The estate of any person in 1. through 6. above.

**C.**    Any entity or organization **you** newly acquire or form and over which **you** have jurisdiction, will qualify as a **Named Insured** if there is no other similar insurance available to that organization. However:

1.   Coverage under this provision is afforded only until the 90th day after **you** acquire or form the entity or organization or the end of the policy period, whichever is earlier;

2.   Coverage does not apply to **bodily injury** or **personal injury** arising out of any **employment wrongful act(s)** committed before **you** acquired or formed the entity or organization; and

3.   Coverage does not apply to **wrongful act(s)** that take place before **you** acquired or formed the entity or organization.

D.   No person, entity or organization is an **Insured** with respect to any of the following boards, commissions or entities:

1.   Airports;

2.   Transit authorities;

3.   Hospitals, nursing homes, clinics or other similar health facilities;

4.   Housing authorities; or

5.   Port authorities.

E.   No person, entity, or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the **Declarations Page**.

## SECTION III - LIMIT(S) OF INSURANCE

A.   The **Limit(s) of Insurance** shown in **Item 3.** of the **Declarations Page** and the rules below fix the most **we** will indemnify the **Insured** under this Coverage Part regardless of the number of:

1.   **Insureds**;

2.   **Claims** made; or

3.   Persons or organizations making **claims**.

B.   1.   The each **claim Limit of Insurance** is the most **we** will indemnify the **Insured** for **loss** under **Coverage Part B** for any single **claim**.

2.   Subject to **B.** 1. above, the **Coverage Part B** Aggregate **Limit of Insurance** is the most **we** will indemnify the **Insured** for all **loss** for all covered **claims** deemed first made during the policy period.

C.   The Coverage Part each **claim Limit of Insurance** and the Aggregate Limit apply to **loss** in excess of the **retained limit** shown on the **Declarations Page**, **Item 2.**, **Schedule of Retained Limit(s)**, **Coverage Part B**, and will not be reduced by the **retained limit**.

D.   If any **occurrence** covered in whole or in part under **Coverage Part A** of this policy (or any preceding or succeeding policy issued by Genesis Insurance Company or Genesis Indemnity Insurance Company) also constitutes a **wrongful act(s)** covered in whole or in part under **Coverage Part B** of this policy (or

any preceding or succeeding policy issued by Genesis Insurance Company or Genesis Indemnity Insurance Company), then only the Coverage Part with the higher limits for the each **occurrence** (**Coverage Part A**) or each **claim(s)** (**Coverage Part B**) **Limit(s) of Insurance** as listed on the **Declarations Page** or any Endorsement, and its corresponding **retained limit**, will apply. If the each **occurrence** (**Coverage Part A**) and the each **claim(s)** (**Coverage Part B**) **Limit(s) of Insurance** as listed on the **Declarations Page** or any Endorsement are equal, only one limit will still apply and it will be the each **occurrence** (**Coverage Part A**) **Limit(s)of Insurance** and its corresponding **retained limit**.

E.    The **Limit(s) of Insurance** apply separately to each consecutive annual period, and to any remaining period of less than twelve (12) months, starting with the beginning of the policy period shown on the **Declarations Page**, unless the policy period is extended after issuance for an additional period of less than twelve (12) months.  In that case, the additional period will be deemed part of the last preceding annual period for purposes of determining the **Limit(s) of Insurance**.

## SECTION IV - EXTENDED REPORTING PERIODS

A.    **We** will provide one or more **Extended Reporting Periods**, as described below, if:

   1.    This Coverage Part is canceled or not renewed; or

   2.    **We** renew or replace this Coverage Part with insurance that does not apply to **wrongful acts** on a claims-made basis.

B.    **Extended Reporting Periods** do not extend the Coverage Part period or change the scope of coverage provided.  They apply only to **claim(s)** arising out of **wrongful act(s)**, including all **related wrongful act(s)**, that take place before the end of this Coverage Part's policy period.

Once in effect, **Extended Reporting Periods** cannot be canceled.

C.    A **Basic Extended Reporting Period** is automatically provided without additional charge.  This period starts with the end of this Coverage Part's policy period, and lasts for 60 days.

The **Basic Extended Reporting Period** does not apply to claims that are covered under any subsequent insurance **you** purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

D.    A **Supplemental Extended Reporting Period** of 3 years duration is available, but only by an endorsement and for an extra charge.  This supplemental period starts when the **Basic Extended Reporting Period** ends.

**You** must give **us** a written request for this endorsement within 60 days after the end of the **Coverage Part B** policy period.  The **Supplemental Extended Reporting Period** will not be effective unless **you** pay the additional premium in full within 15 days of the beginning of the start of the **Supplemental Extended Reporting Period**.

**We** will determine the additional premium in accordance with **our** rules and rates.  In doing so, **we** may take into account the following:

   1.    The exposures insured;

   2.    Previous types and amounts of insurance;

3.  The **Limit(s) of Insurance** available under this Coverage Part for future indemnification payments; and

4.  Other related factors.

The additional premium will not exceed 100% of the most recent  annual premium for this Coverage Part.

This endorsement will set forth the terms, not inconsistent with this Section, applicable to the **Supplemental Extended Reporting Period**, including a provision to the effect that the insurance afforded for **claims** first made during such period is excess over any other valid and collectible insurance available under policies in force after the **Supplemental Extended Reporting Period** starts.

E.  **Extended Reporting Periods** do not reinstate or increase the **Limit(s) of Insurance** of this Coverage Part nor do they modify the handling of the **retained limit(s).**

---

## SECTION V - DEFINITIONS

A.  **Administration** means:

1.  Providing information to employees, including their dependents and beneficiaries, with respect to eligibility for any **employee benefit program.**

2.  Handling of records in connection with the **employee benefit program**; or

3.  Effecting, continuing or terminating any employee participation in any benefit included in the **employee benefit program**, but this does not include the actual effecting, continuing or terminating of such **employee benefit program** which will be deemed to be a fiduciary act

provided that all such **administration** is performed by a person authorized by the **Insured**.

However, **administration** does not include handling payroll deductions.

B.  **Advertising injury** means injury arising out of one or more of the following **offenses** committed in the course of advertising **your** goods, products or services:

1.  Electronic or other publication, transmission, dissemination or storage of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

2.  Electronic or other publication, transmission, dissemination or storage of material that violates a person's right of privacy;

3.  Misappropriation of advertising ideas or style of doing business; or

4.  Infringement of another's copyright, trade dress or slogan in **your** advertisement.

C.  **Bodily injury** means bodily injury, sickness, disease, shock, fright, mental injury or anguish, emotional distress, or disability sustained by a natural person, including death resulting from any of these at any time.

D.     **Claim(s)** means an oral or written demand or notice received by an **Insured** containing an allegation of **wrongful act(s)** committed by and seeking damages against an **Insured**. **Claim(s)** will include civil proceedings, arbitration, other alternative dispute resolutions, or other legal proceedings. **Claim(s)** will also include a charge or complaint filed with the EEOC or its state or local equivalent containing an allegation of **employment wrongful act(s)** committed by an **Insured**. With the exception of such allegations of **employment wrongful act(s)**, **claim(s)** will not include:

    1.     Any complaint or investigatory or enforcement action by any federal, state or local governmental agency; or

    2.     Any labor or grievance arbitration that is subject to a collective bargaining agreement.

E.     **Claim expenses** mean:

    1.     Claim investigation costs;

    2.     Legal expenses; or

    3.     Litigation costs, including but not limited to **pre-** and post-**judgment interest** as required by law on awards and judgments and the cost of bonds to release attachments or to appeal without any obligation to furnish such bonds;

which are reasonable in amount and can be directly allocated to the defense of an **Insured** against a specific **claim** to which this Coverage Part applies.

**Claim expenses** do not include salaries and expenses of any **Insured** (including affiliate or subsidiary organizations of any **Insured**), annual retainers, overhead, and any fees paid for claim administration.

F.     **Coverage territory** means anywhere in the world if the **Insured's** responsibility to pay damages is determined in a civil, arbitration or alternative dispute resolution proceeding brought in the United States of America (including its territories and possessions), Puerto Rico or Canada.

G.     **Electronic data** means information, facts or programs stored as or on, created or used on, transmitted to or from computer software, including systems ad applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

H.     **Employee benefit program** means:

    1.     Group life insurance, employee assistance programs, group accident or health insurance, investment plans or savings plans, profit sharing plans, pension plans and stock subscription plans, provided that no one other than an employee of the **Insured** may subscribe to such insurance or plans; and

    2.     Unemployment insurance, social security benefits, workers compensation and disability benefits.

I.     **Employment-related harassment** means actual or alleged unwelcome or offensive verbal or physical conduct, including sexual molestation, against a present or former employee of, or an applicant for employment with, the **Named Insured**.

J.     **Employment wrongful act(s)** means any actual or alleged error or misstatement or misleading statement, act or omission, neglect, negligence or breach of duty by an **Insured** against a present or former employee of, or an applicant for employment with, the **Named Insured**, including, but not limited to, refusal to employ, termination of employment, wrongful demotion, wrongful failure to promote, negative evaluation, hostile work environment, reassignment, wrongful discipline, defamation, humiliation, false arrest, false imprisonment, coercion, libel, slander, retaliation, invasion of privacy, failure to grant tenure, **employment-related harassment** or discrimination.

K.     **Fungus(es)** includes, but is not limited to, any form or type of mold, mushroom or mildew.

L.     **Loss** means the total amount of damages, including any punitive or exemplary damages when not against public policy and attorney fees awarded in favor of third parties, the **Insured** is legally obligated to pay because of a **wrongful act(s)**. **Loss** also includes related **claim expenses**, back pay, and front pay. **Loss** will be established after a contested **claim** or by a compromise settlement to which **we** have previously agreed in writing. **Loss** will be reduced by any recoveries or salvages which have been paid or collected. **Loss** does not include any damages, costs, or expenses incurred by any **Insured** in making physical changes, modifications, alternations, or improvements as part of an accommodation or any cause of action of any person pursuant to the Individuals with Disabilities Education Act, American with Disabilities Act of 1990, Section 504 of the Rehabilitation Act or any similar federal, state or local law.

M.     **Non-employment harassment** means actual or alleged unwelcome or offensive verbal or physical conduct, including sexual molestation, against anyone other than a present or former employee of, or an applicant for employment with, the **Named Insured** and shall include any alleged failure to prevent such conduct.

N.     **Offense** means any of the **offenses** included in the definitions of **advertising injury** or **personal injury**.

O.     **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following **offenses** from the conduct of **your** operations:

　　　1.     False arrest, detention or imprisonment;

　　　2.     Malicious prosecution;

　　　3.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor,

　　　4.     Electronic or other publication, transmission, dissemination or storage of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

　　　5.     Electronic or other publication, transmission, dissemination or storage of material that violates a person's right of privacy.

P.     **Pollutants** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

Q.     **Post-judgment interest** means interest of the full amount of any settlement, verdict, award or judgment that accrues after entry of the settlement, verdict, award or judgment and before **we** have paid, offered to pay, or deposited in court the part of the settlement, verdict, award or judgment that is within the applicable **Limit(s) of Insurance**.

R.   **Pre-judgment interest** means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment whether or not made part of the settlement, verdict, award or judgment.

S.   **Professional services** mean any service by anyone engaged in the practice of medicine, including but not limited to, physicians, surgeons, osteopaths, chiropractors, anesthesiologists, dentists, psychiatrists, psychologists, nurses, paramedics, emergency medical technicians, first-aid attendants or pharmacists.

T.   **Property damage** means:

    1.   Physical injury to tangible property, including all resulting loss of use of that property; or

    2.   Loss of use of tangible property that has not been physically injured.

U.   **Related wrongful act(s)** will mean **wrongful act(s)** which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

V.   **Retained limit** means the amount as shown in **Item 2, Coverage Part B** of the **Declarations Page**, **Schedule of Retained Limit**. This amount applies to each and every **claim(s)**, and:

    1.   Shall be comprised only of **loss**. The **Insured** shall be responsible for all **claim expenses** incurred without the right to indemnification in accordance with this Coverage Part's terms and conditions until the **retained limit** is exhausted as a result of **loss**;

    2.   Shall not be impaired by any **claim(s)** or part of **claim(s)** brought against the **Insured** for coverages which are not included in the terms of this Coverage Part; and

    3.   Payment of **retained limit** may not be satisfied by any other insurance or negated in whole or part by any form of immunity to judgment or liability.

W.   **Silica** means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

X.   **Silica-related dust** means a mixture or combination of silica and other dust or particles.

Y.   **Spore(s)** include any reproductive body produced by or arising out of any **fungus(es)**.

Z.   **Wrongful act** means any actual or alleged error or misstatement or misleading statement, act or omission, neglect, negligence, or breach of duty by an **Insured** solely in the course of the **Insured's** duties for **you**. **Wrongful act** will also include such acts in the **administration** of an **employee benefit program** and **employment wrongful act(s)**.

   Copyright, Genesis Insurance Company, 2005

# COMMON POLICY CONDITIONS

All **Coverage Parts** included in this policy are subject to the following:

**A.   BANKRUPTCY**

In the event of bankruptcy, insolvency, or receivership of the **Insured**, this policy shall not apply as a replacement of any relevant **retained limit(s)** and **our** relevant **Limit(s) of Insurance** will apply only in excess of the relevant **retained limit(s)** as shown in **Item 2.**   of the **Declarations Page, Schedule of Retained Limit(s).**

**B.   CANCELLATION**

1.    The **First Named Insured** shown in the **Declarations Page** may cancel this policy by mailing or delivering to **us** advance written notice of cancellation.   The **First Named Insured's** cancellation shall be binding on all other **Insureds.**

2.    If this policy has been in effect for less than 60 days, and is not a renewal of a policy **we** issued, **we** may cancel this policy for any reason by mailing by Certified mail to the **First Named Insured** written notice of cancellation at least:

    a.    10 days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

    b.    60 days before the effective date of cancellation if **we** cancel for any other reason.

3.    If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy **we** issued, **we** may cancel this policy only for one or more of the following reasons:

    a.    Nonpayment of premium;

    b.    Acts or omissions by **you** or **your** representative which materially increase the hazard insured against;

    c.    Acts or omissions by **you** or **your** representative constituting fraud or material misrepresentation in the procurement of this policy, in continuation of this policy or in presenting a **claim** under this policy;

    d.    Material change in the risk assumed;

    e.    Breach of policy duties or conditions;

    f.    Loss of reinsurance applicable to the risk insured against resulting from termination of treaty or facultative reinsurance; or

    g.    Determination by the Insurance Regulator of any state that the continuation of the policy would place **us** in violation of the insurance laws or would jeopardize **our** solvency.

If **we** cancel this policy based on one or more of the above reasons, **we** will send written notice of cancellation by Certified mail to the **First Named Insured** stating the reason(s) for cancellation.   **We** will mail this notice at least:

     Copyright, Genesis Insurance Company, 2005

a. 10 days before the effective date of cancellation if **we** cancel for nonpayment of premium.

b. 90 days before the effective date of cancellation if **we** cancel for any other reason other than the nonpayment of premium.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If **we** cancel for nonpayment of premium, **you** may continue the coverage and avoid the effect of the cancellation if **we** receive payment in full at any time prior to the effective date of cancellation.

6. If this policy is canceled, **we** will send the **First Named Insured** any premium refund due. If **we** cancel, the refund will be pro rata. If the **First Named Insured** cancels, the refund will be 90% of the pro rata refund, where allowable by law. The cancellation will be effective even if **we** have not made or offered a refund.

7. If **we** have indemnified the **Insured** for the entire amount of the policy's Aggregate Limit(s) prior to this policy's termination date for losses other than losses arising from the **automobile hazard**, that portion of this policy's premium attributable to such coverage is fully earned.

8. Proof of mailing will be sufficient proof of notice of cancellation.

**C.   NONRENEWAL**

1. If **we** elect not to renew this policy, **we** will mail by Certified mail to the **First Named Insured** written notice of nonrenewal at least 60 days prior to the expiration of this policy.

2. Proof of mailing will be sufficient proof of notice of nonrenewal.

3. If either one of the following occurs, **we** are not required to provide written notice of nonrenewal:

a. A company within the same insurance group has offered to issue a renewal policy; or

b. **You** have obtained replacement coverage or have agreed in writing to do so.

**D.   CHANGES**

The policy contains all the agreements between **you** and **us** concerning the insurance afforded. The **First Named Insured** shown in the **Declarations Page** is authorized to make changes in the terms of this policy with **our** prior written consent. This policy's terms can be amended or waived only by endorsement issued by **us** and made a part of this policy.

**We** shall not be bound by any assignment of interest by any **Insured** unless **our** consent to such an assignment is endorsed into this policy.

**E.      DUTIES IN THE EVENT OF OCCURRENCE, WRONGFUL ACT, CLAIM OR SUIT**

1.      **You** shall be deemed to be aware of and have knowledge of an **occurrence** or **wrongful act(s)** as of the date that **your** legal department, risk management department, claim administrator or any of **your** elected, appointed or employed officials receives notice of such **occurrence** or **wrongful act(s)**.

2.      As a condition precedent to coverage, **you** must notify **us** as soon as practicable of an **occurrence** or **wrongful act(s)** which appears reasonably likely to involve indemnification or result in a **claim** or **suit** under this policy.  Written notice should be as complete as possible, and must at least include:

   a.      How, when, and where the **occurrence** or **wrongful act(s)** took place;

   b.      The **Insured's** name and address;

   c.      The names and addresses of any persons seeking damages and/or any injured persons or witnesses; and

   d.      A description outlining the nature of any **occurrence** or **wrongful act(s)** and of any resulting injury or damage.

   Notice of an **occurrence** or **wrongful act(s)** is not notice of a **claim** or **suit**.  Once an individual(s) identified in paragraph 1. of this Condition becomes aware of an **occurrence** or **wrongful act(s)** which potentially implicates this policy, those individuals and all other **Insureds** must in no way jeopardize **our** rights.

   Failure of any other of **your** agents or employees to notify **us** of any **occurrence** or **wrongful act(s)** of which the agent(s) or employee(s) has knowledge shall not by operation of this Condition invalidate the insurance afforded by this policy.

3.      If notice of an **occurrence** or **wrongful act(s)** results in a subsequent **claim** or **suit**,  and appears reasonably likely to involve indemnification by this policy, **you** must immediately record the specifics of the **claim** or **suit,** including any demands, notices, summonses, or legal papers, the date received and notify **us** as soon as practicable as a condition precedent to coverage.  Notice shall be deemed given as soon as practicable if it is given to **us** by the department or person to whom **you** have delegated such responsibility as soon as practicable after they become aware of a **claim** or **suit**.

4.      When **we** exercise **our** right to associate in or assume control of the defense of a **claim** or **suit** as provided by the Coverage Part(s), **you** and any other **Insured** involved in such **claim** or **suit** must:

   a.      Authorize **us** to obtain records and other information;

   b.      Cooperate with **us** in the investigation, settlement or defense of the **claim** or **suit**; and

   c.      Assist **us**, upon **our** request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this policy may also apply.

5.      In any event as a condition precedent to coverage **you** must notify **us** in the manner specified above of any **occurrence, wrongful act(s), claim,** or **suit** which:

a.  Results in the establishment of a reserve, or would reasonably require the establishment of a reserve, for **ultimate net loss** under Coverage Part A or **loss** under Coverage Part B which equals or exceeds 33% of the relevant **retained limit**; or

b.  Involves any of the following:

   (1)  Death;

   (2)  An amputation or loss of use of a major extremity;

   (3)  Brain damage affecting mentality or central nervous system - such as permanent disorientation, behavior disorder, personality change, seizures, motor deficit, inability to speak (aphasia), hemiplegia or unconsciousness (comatose);

   (4)  Blindness;

   (5)  Any injury to the spinal cord;

   (6)  Multiple fractures;

   (7)  Nerve damage causing paralysis and loss of sensation in arm and hand, including but not limited to, RSD or brachial plexus nerve damage;

   (8)  Massive internal injuries affecting body organs;

   (9)  Burns - involving over 20% of the body with third degree, or over 40% of the body with second degree;

   (10)  Any disability where it appears reasonably likely that there will be disability that lasts for more than one year;

   (11)  Death of detainee while in custody or during the arrest process;

   (12)  Firearm discharge resulting in **bodily injury** or death;

   (13)  Rape and/or sexual molestation of any individual; or

   (14)  Class actions or putative class actions.

## F.   EXAMINATION OF YOUR BOOKS AND RECORDS

**We** may examine and audit **your** books and records as they relate to this policy at any time during the policy period and up to five years afterward.

## G.   FIRST NAMED INSURED

**First Named Insured** means the person, entity, or organization shown in **Item 1, First Named Insured** of the **Declarations Page**. Such person, entity, or organization is authorized to act as sole agent for all **Insureds** for the procurement of coverage hereunder, the payment of premiums, the giving or receiving of notice of cancellation or nonrenewal, the receiving of unearned premium and the making of any changes in the policy.

**H.      INSPECTION AND SURVEYS**

**We** have the right but are not obligated to:

1.      Make inspections and surveys at any time;

2.      Give **you** reports on the conditions **we** find; and

3.      Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.  **We** do not make safety inspections.  **We** do not undertake to perform the duty of any person or organization to provide for the health and safety of workers or the public.  And **we** do not warrant that conditions:

1.      Are safe or healthful; or

2.      Comply with laws, regulations, codes or standards.

**I.      LEGAL ACTION AGAINST US**

No person, entity, or organization has a right under this policy:

1.      To join **us** as a party or otherwise bring **us** into any **claim** or **suit**; or

2.      To sue **us** under this policy unless all of its terms have been fully complied with.

A person, entity, or organization may sue **us** to recover for an **agreed settlement**, as defined below, or for a final judgment against an **Insured** obtained after a contested **claim** or **suit**,
but **we** will not be liable for **ultimate net loss** under Coverage Part A or **loss** under Coverage Part B that are not payable under the terms of this policy or that are in excess of the relevant **Limit(s) of Insurance** or within the applicable **retained limit**.

**We** also retain the right to challenge the terms and conditions of any settlement which is not an **agreed settlement**, including but not limited to whether an **Insured** had a legal obligation to pay damages to the claimant and whether the facts of the **claim** or **suit** underlying the settlement create any obligations under this policy.  An **agreed settlement** means a settlement and release of liability signed by **us**, the **Insured** and the claimant or the claimant's legal representative.

**J.      NAMED INSURED**

**Named Insured** means the persons or organizations shown in **Item 1, Named Insured(s)** of the **Declarations Page** including the **First Named Insured**.

**K.      PREMIUMS**

The **First Named Insured** shown in the **Declarations Page** is responsible for the payment of all premiums.

**L.  OTHER INSURANCE**

1.  All coverage under this policy is excess over any other insurance, whether written on a primary, excess, contingent or on any other basis, except for other insurance that is specifically purchased by **you** to apply in excess of this policy's relevant **Limit(s) of Insurance** set forth in the **Declarations Page** or in any endorsement.  In any event, **we** will have no duty to defend any **claim** or **suit**.  The **retained limit(s)** may not be satisfied by any other insurance.

2.  If any other insurance purchased by **you** or on **your** behalf is deemed to apply on the same excess basis as this policy, **our** indemnification obligation, subject to the relevant **retained limit(s)** and **Limit(s) of Insurance** of this policy, will be shared with such other insurance by the method described in paragraphs 3.and 4. below.

3.  If such other insurance permits contribution by equal shares, **we** will follow this method also.  Under this approach, each insurer contributes equal amounts until it has paid or indemnified (as the case may be) the **Insured** its relevant limit of insurance or none of the loss remains, whichever comes first.

4.  If such other insurance does not permit contribution by equal shares, **we** will indemnify by limits.  Under this method, each insurer's share is based on the ratio of its relevant limit(s) of insurance to the total limits of insurance of all such insurers.

5.  **We** have no obligation to indemnify or pay any expenses incurred by such other insurer(s).

**M.  PREMIUM AUDIT**

1.  **We** will compute all premium(s) for this policy in accordance with **our** rules and rates.

2.  Premium(s) for this policy shown as advance premium(s) is/are a deposit premium(s) only.  At the close of each policy period, **we** will compute the earned premium(s) for that period.  Audit premium(s) are due and payable on notice to the **First Named Insured**.

3.  The advance premium(s) stated in the **Declarations Page** is/are an estimated deposit premium(s) only and will be held until final expiration date at which time the earned premium(s) shall be computed.  If the computed earned premium(s) exceed(s) the estimated advance premium(s) paid, including any interim audit adjustments, **you** shall pay the excess to **us**.  If the computed earned premium(s) is/are less than the paid estimated advance premium(s), including any interim audit adjustments, **we** shall return the unearned portion to the **First Named Insured** subject to any applicable minimum premium(s) shown in the **Declarations Page**.

4.  The **First Named Insured** must keep record of the information **we** need for premium(s) computation, and send **us** copies at such times as **we** may request.

5.  If the policy is written on a flat premium basis, it is not subject to premium audit.

**N.  REPRESENTATIONS**

By accepting this policy and as a condition precedent to coverage, **you** agree that:

1.  The information shown on the **Declarations Page** is accurate and complete;

2.   The information is based upon representations **you** made to **us** in **your** submission and/or application(s) for this policy;

3.   **We** have issued this policy in reliance upon **your** representations in the submission and/or application(s); and

4.   Except as otherwise provided in this policy or by law, this policy is void in any case of fraud or if **you** conceal or misrepresent any material facts concerning this policy, in **your** submission and/or application(s) for this policy.

## O.   SEPARATION OF INSUREDS

Except with respect to the relevant **Limit(s) of Insurance** and the corresponding **retained limit(s)**, any applicable exclusion(s), and any rights or duties specifically assigned to the **First Named Insured**, this policy applies:

1.   As if each **Named Insured** were the only **Named Insured**; and

2.   Separately to each **Insured** against whom **claim** or **suit** is brought.

## P.   SUBROGATION - RECOVERY FROM OTHERS

1.   **We** have the right to recover all payments which **we** have made to or on behalf of the **Insured** from anyone liable for a loss.  If the **Insured** recovers from anyone liable for a loss, **we** shall be reimbursed first from such recovery to the extent of **our** payments to the **Insured**.  The **Insured** expressly waives any rights it may have to recoup any uninsured portions of any loss prior to **our** recovery of the full amounts **we** paid hereunder.

2.   If the **Insured** does not commence an action or proceeding to recover damages from anyone liable for a loss paid by **us**, the **Insured** agrees to timely assign all of its rights of recovery to **us** and also agrees that **we** have the rights of the **Insured** to recover from anyone liable for a loss.  The **Insured** will do everything necessary to protect those rights and help **us** to enforce them.

3.   Any such recovery will be allocated in the following order:

a.   First, to reimburse any insurer for insurance coverage in excess of this policy's relevant **Limit(s) of Insurance** set forth on the **Declarations Page** or any endorsement, or to reimburse the **Insured** to the extent there is no such insurance;

b.   Then, **we** will be reimbursed for all of **our** payments under this policy;

c.   Finally, any balance of the recovery which remains after **we** have been reimbursed will be paid to the **Insured**.

4.   Expenses of all proceedings to recover from anyone liable for loss covered by this policy will be deducted from any amount which has been recovered prior to the allocation in accordance with paragraph 3. above.

5.   If such action is commenced by the **Insured**, with **our** prior approval, and the expenses incurred in obtaining recoveries exceeds the amount recovered, if any, the excess expense shall be apportioned between the parties in proportion to the liability of each party for the loss before the recovery was obtained.  If such an action or proceeding undertaken solely by **us** results in no recovery, **we** will pay all related expenses.

6.      Notwithstanding anything to the contrary in paragraphs 1. through 5. above, in the event **we** make any payment under this policy, **we** will waive **our** right of recovery against any person or organization with whom the **Insured** has:

        a.      A written contract that is effective and executed prior to the date of an **occurrence** or **wrongful act(s),** if such contract requires the **Insured** to waive its subrogation, contribution, or indemnity rights; or

        b.      Performed or received work under a letter of intent, work order, or other letter of understanding provided that the **Insured** can demonstrate that such letter of intent, work order, or other letter of understanding would customarily be reduced to a written contract that requires the **Insured** to waive its subrogation, contribution, or indemnity rights.

**Q.**     **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

**Your** rights and duties under this policy may not be transferred without **our** prior written consent.

**R.**     **SERVICE OF SUIT**

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore the Company hereby designates the Commissioner, Superintendent or Director of Insurance or other officer specified for that purpose in the statute, and his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in any Court of competent jurisdiction by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the Corporate Secretary of Genesis Indemnity Insurance Company, Financial Centre, P.O. Box 10352, Stamford, Connecticut 06904-2352, as the entity to whom said officer is authorized to mail such process or a true copy thereof.

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

Secretary                                              President

ELECTRONICALLY FILED
2013-Feb-28 13:44:34
60CV-13-951

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## _____DIVISION

**SHERRY A. PETTY ON
BEHALF OF THE ESTATE OF
MALIK LEWIS, deceased**                    **PLAINTIFF**

CASE NO. _____

**LITTLE ROCK SCHOOL
DISTRICT**                           **DEFENDANT**

### <u>COMPLAINT</u>

1. Sherry A. Petty ("Plaintiff") is a resident of Pulaski County, Arkansas.

2. Little Rock School District ("Defendant") is a public body corporate located in Pulaski, County Arkansas.

3. The Court has personal and subject matter jurisdiction over the parties in this action. Venue is proper in this court.

4. Plaintiff brings this action to recover damages arising out of an incident which occurred in Pulaski County, Arkansas on the 10th day of April, 2010.

5. On April 10, 2010, Malik Lewis fell from a Little Rock School District bus and died.

1



EXHIBIT
2

6. Defendant was on notice of Malik Lewis' special needs.

7. Defendant did not have the proper personnel on the bus to handle Malik Lewis' special needs.

8. Defendant was negligent in failing to provide adequately trained bus staff.

9. Defendant caused the wrongful death of Malik Lewis.

10. Malik Lewis died as a direct and proximate cause of the aforesaid negligence of the Defendant.

WHEREFORE, Plaintiff Sherry A. Petty requests that this matter be set for a jury trial and that after such trial she be awarded damages in excess of $1,000,000.00 for the wrongful death of Malik Lewis.


Respectfully submitted,


Lawrence Anthony Walker #12042
John W. Walker, P.A.
1723 Broadway
Little Rock, Arkansas
501-3743758
501-374-4187 fax
Email: tonywalkeratty@gmail.com

Dated February 28, 2013

IN THE CIRCUIT/PROBATE COURT OF PULASKI COUNTY, ARKANSAS

12TH DIVISION

IN THE MATTER OF:                                      NO.
Malik Lewis, deceased                          60PR2012      265

FILED 02/14/12 14:20:21
Larry Crane Pulaski Circuit Clerk

### PETITION TO APPOINT ADMINISTRATOR

Petitioner, Sherry Petty whose address is 12201 Mara Lynn Road, Apt. 1206, Little Rock,

Arkansas 72211 whose interest in the decedent's estate is that of mother of decedent, petitions

that Letters of Administration of the Estate be issued. The facts known to petitioners are:

1. The decedent, Malik Lewis whose birthdate is February 8, 2002 and whose address is

12201 Mara Lynn Road, Apt. 1206, Little Rock, Arkansas 72211 died intestate near Little Rock,

Arkansas on or about April 2, 2010.

2. The heirs of the decedent and their respective ages, relationships to the decedent and

addresses, are:

| NAME | AGE | RELATIONSHIP | ADDRESS |
|------|-----|--------------|---------|
| Sherry A. Petty | adult | mother | 12201 Mara Lynn Rd. Apt. 1206 Little Rock, Arkansas 72211 |
| Kenneth Lewis | | father | incarcerated at Arkansas State Prison - ADC 28411 |

3. The probable value of the decedent's estate is unknown. The estate has a claim based

upon wrongful death. The claim is grounded in Arkansas tort laws. The value is undetermined

at this time.

1

60PR-12-265        601-60100038263-012
MALIK LEWIS                    3 Pages
PULASKI CO        02/14/2012 02:17 PM
CIRCUIT COURT                    FI76$

4. Petitioner requests that she be appointed Administrator of the estate for purposes of the wrongful death claim. The relationship of Petitioner to decedent and other facts which entitle her to be appointed are:

    a)    Sherry Petty is the mother of the decedent who lives in Arkansas; and

    b)    No other person has filed a petition to be named as a representative of decedent's estate.

5. That the petitioner, Sherry Petty, is qualified to serve pursuant to A.C.A. 28-48-101 et. al. and is an interested person as defined by A.C.A. 28-1-102.

THEREFORE, Petitioner requests that this Court enter an Order determining the facts of the death and the intestacy of the decedent, and appoint petitioner as Administrator of the Estate of Malik Lewis for purposes of pursuing a wrongful death claim.

_Sherry Petty_
Sherry Petty

STATE OF ARKANSAS
COUNTY OF _Pulaski_

SUBSCRIBED AND SWORN to before me this _14th_ day of February, 2012.

_____
Notary Public

My Commission Expires
_12-16-21_

RIZELLE AARON
Notary Public-Arkansas
Pulaski County
My Commission Expires 12-16-2021
Commission # 12388426

2